**John Louis FRANKLIN, on Behalf of Himself and as a Representative of Certain Underwriters at Lloyd's of London; together with Phoenix Assurance Plc, Terra Nova Insurance Company Ltd., Hansa Re & Marine Insurance Co. (UK) Ltd., Skandia Marine Insurance Company (UK) Limited, and Gan Incendie Accidents, Plaintiffs,**

v.

**FUGRO–McCLELLAND (SOUTHWEST), INC., and Philip King, Defendants.**

**Civil Action No. H–96–2105.**

United States District Court,
S.D. Texas,
Houston Division.

March 31, 1997.

Michael A. Orlando, Meyer Orlando & Evans, Houston, TX, for Plaintiffs.

Charles Tynan Buthod, Baker & Botts, Houston, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

ATLAS, District Judge.

Six insurance companies ("Insurers") have brought this action against Defendants Fug-

ro–McClelland (Southwest), Inc., and Philip King ("Defendants") seeking a declaratory judgment that the Insurers do not have a duty to defend or indemnify Defendants in connection with another lawsuit currently pending against Defendants. The Insurers have filed a **Motion for Summary Judgment** ("Motion") [Doc. # 16]. Defendants have filed a motion to dismiss or continue the Insurers' Motion [Doc. # 17] and have also filed a **Cross–Motion for Partial Summary Judgment** [Doc. # 18]. The Court has considered the Motions, Defendants' Response ("Response") [Doc. # 18], all other matters of record in this case, and the relevant authorities. For the reasons stated below, the Insurers' **Motion for Summary Judgment** [Doc. # 16] is now **GRANTED**. Defendants' **Motion to Dismiss and Alternatively to Continue Plaintiffs' Motion for Summary Judgment Pursuant to Rule 56(f)** [Doc. # 17] is **DENIED**, and Defendants' **Cross–Motion for Partial Summary Judgment** [Doc. # 18] is **DENIED**.

## I. *FACTUAL BACKGROUND*

Defendant Fugro–McClelland (Southwest), Inc. ("Fugro"), an engineering corporation, holds an excess liability insurance policy with Plaintiff Insurers that covers advertising injuries caused by Fugro and its employees during the period October 1, 1993, to October 1, 1994.[1] The Insurers contend that this policy does not cover Fugro and its employee Philip King for injuries arising out of claims brought against them in a currently pending suit, *Arthur S. Koenig and MDI Labs, Inc. v. Fugro–McClelland (Southwest), Inc. and Philip King*, No. SA93–CA0976 (W.D.Tex. filed Nov. 15, 1993).

In the underlying lawsuit, Plaintiffs Arthur S. Koenig ("Koenig") and MDI Labs, Inc. ("MDI") allege the following facts. *See* Plaintiff's First Amended Complaint and Application for Injunctive Relief ("Underlying Complaint"), Exhibit A–2 to Motion, at 5–9. In the summer of 1991, an employee of Fugro's

viewed Koenig and MDI's operations and equipment under an obligation of confidence. In February 1992, Fugro solicited MDI to perform soil sampling work for Fugro using a machine patented by Koenig and licensed to MDI. Koenig allowed King and another Fugro employee to observe his work but advised them that the machine was patented and that the methods they would be observing were confidential and not available for use or disclosure to others. Nevertheless, during the sampling, King and the other employee closely observed the machine as well as Koenig's soil sampling methods. In July 1992, King solicited technical information from Koenig regarding MDI's business methods and procedures, such as MDI's pricing structure, marketing, scheduling, and billing. Believing that King was interested in the information in order to evaluate MDI's capability of performing work for Fugro, Koenig responded to King's questions but again stated that the information he provided was confidential. Koenig and King arranged for MDI to perform soil sampling work for Fugro.

Shortly thereafter, King informed Koenig that Fugro would not need MDI to perform the soil sampling work. In July 1992, Koenig learned from a Fugro employee that, under King's directive, Fugro had constructed a soil sampling machine that would allow Fugro to perform the work itself. After viewing Fugro's machine, Koenig informed King that Fugro's construction and use of the machine violated Koenig's patent. Koenig requested in writing that Fugro cease infringing his patent and misappropriating MDI's trade secret information. In November 1992, Fugro's president assured Koenig that Fugro would no longer use the disputed machine. However, Koenig alleges that Fugro nevertheless continued to infringe his patent by using the machine and constructing and using additional infringing machines. Koenig also alleges that Fugro has used MDI's trade secret information in order to

---

1. *See* Excess Comprehensive General Liability Policy Cover Note, Exhibit A–1 to Motion. The policy covers up to $750,000 in injuries in excess of the primary policy, which has a limit of $250,000. The insurers for the primary policy have also filed suit against Defendants in state court, seeking a declaratory judgment that they do not have a duty to defend or indemnify Defendants in connection with the underlying litigation against Defendants. *See Underwriters v. Fugro–McClelland (Southwest), Inc.*, No. 95–11363 (334th Dist. Ct., Harris County, Tex.).

market and provide services in competition with MDI.

Koenig and MDI's complaint alleges Defendants' liability for patent infringement, misappropriation of trade secrets, and other related causes of action. *See* Underlying Complaint, at 15.[2]

In this declaratory judgment suit, the Insurers raise a number of theories in support of their argument that Koenig and MDI's claims are not covered under Defendants' excess insurance policy. The Court agrees with the Insurers on one theory, that, under the loss in progress doctrine, because the alleged injury began prior to the effective date of the insurance policy, the claims are not covered. Because this conclusion disposes of the parties' dispute, the Court need not address the Insurers' other theories.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Boze v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Boze*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on*

*other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir.1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. If the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996)); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds,* 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## III. *DISCUSSION*[3]

 Under the "loss in progress" or "known loss" doctrine,

---

**2.** The other causes of action include unfair competition, fraud, breach of fiduciary duty of an engineer to a client, breach of express or implied contract of confidence, intentional and negligent breach of the duty to maintain Koenig's confidential information in confidence, and tortious

interference with current and prospective contracts and business relationships.

**3.** In their earlier Motion to Dismiss and Motion to Stay, Defendants argued that this case will not be ripe for adjudication until the underlying law-

insurance coverage is precluded where the insured is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased. The "loss in progress" principle is recognized as part of standard insurance law. An insured cannot insure against something that has already begun and which is known to have begun.

*Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 502 (Tex.App.—Houston [14th Dist.] 1995, no writ) (citations omitted). In *Two Pesos*, a Texas court ruled that the insured, Two Pesos, was not covered under an insurance policy for claims brought against it for trade dress infringement because its wrongful activities began prior to its purchase of the insurance. The court supported its decision by noting that " 'the purpose of insurance is to protect insureds against unknown risks.'" *Id.* (quoting *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 63 (3rd Cir.1982)). Similarly, in the case at bar, Defendants' activities for which they claim liability coverage began well before their insurance policy was purchased. Defendants' alleged wrongful activities began in 1991, or at the latest in 1992, but the insurance policy was not purchased until 1993. Therefore, the "loss in progress" doctrine precludes coverage for the claims asserted against them.

Defendants argue, however, that this doctrine should not apply here because, at the time their insurance policy was purchased, they did not have a known loss. Instead, they contend, since the underlying dispute had not yet been adjudicated, at the time the policy was purchased they had merely a *potential loss*.[4] Defendants attempt to distinguish *Two Pesos* on the ground that, in that case, underlying liability had already been legally established by the time Two Pesos purchased its policy. The Court is not persuaded by this distinction. The *Two Pesos* court did not base its conclusion that a known loss had already occurred on the fact that the underlying lawsuit had been adjudicated. Instead, the court explained that "the risk of liability was no longer unknown because injuries resulted when Two Pesos *first copied* Taco Cabana's trade dress." *Id.* (emphasis added). In other words, the court recognized that Two Pesos first knew of the allegedly covered loss at the time it performed its infringing actions, not at the time that infringement was adjudicated.

In further support of their argument, Defendants cite a California case which held that a third party action against an insured does not create a known loss until the action is adjudicated. In *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal. Rptr.2d 324, 913 P.2d 878 (1995), the California Supreme Court ruled that:

> [T]he loss-in-progress rule will not defeat coverage for a claimed loss where it had yet to be established, at the time the insurer entered into the contract of insurance with the policyholder, that the insured had a *legal obligation* to pay damages to a third party in connection with a loss.

*Id.*, 913 P.2d at 906 (emphasis added). The *Montrose* Court decided that because legal liability for the insured's hazardous waste disposal was not conclusively established before the insured entered its policy, its insurer was obligated to cover its cleanup costs incurred while the policy was in effect. Although the insured knew when it entered the policy that "it was more probable than not that it would be sued," the Court held that it did not yet have a known loss because its liability was contingent on the outcome of the underlying suit. *Id.*

suit is resolved. The Court rejected this argument in its Order Denying Defendants' Motion to Dismiss ("Order") [Doc. # 13]. Defendants resurge their ripeness argument in their current Motion to Dismiss and Alternatively to Continue Plaintiffs' Motion for Summary Judgment Pursuant to Rule 56(f) [Doc. # 17]. Since the Court has determined that this case can be decided as a matter of law, without further factual development in the underlying litigation, the Court, pursuant to the reasoning in its prior Order, will

dispose of this case now in the interests of judicial economy and in the hope that this prompt determination of who bears the risk of loss in the underlying litigation may assist the parties in their risk assessments in that case.

4. Because the underlying litigation has still not been resolved, Defendants contend that Koenig and MDI's claims currently remains a contingent injury.

The Court finds *Two Pesos* to be far more persuasive in this case than *Montrose*. First, since this is a diversity action involving a question of state law, the Court is bound by *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply Texas law to this case.[5] *Montrose* does raise a similar issue to the case at bar, the question of coverage for an underlying lawsuit based on conduct committed prior to entry into an insurance policy, and may therefore serve as persuasive authority before this Court. However, the *Montrose* Court based its conclusion on a close interpretation of a California statute, California Insurance Code §§ 22 and 250, *see Montrose*, 913 P.2d at 904–06, which obviously is inapplicable here in Texas.

Second, the nature of the underlying action in the case at bar, primarily patent infringement, makes this case more similar to *Two Pesos*, in which the underlying action was for trade dress infringement, than to *Montrose*, in which the underlying action was for environmental cleanup liability. In *Montrose*, the insured had committed its potentially liable hazardous waste disposal activities long before entering the disputed policies with its insurers. The resulting damage occurred from the waste's progressive leakage into the soil rather than from any ongoing voluntary actions undertaken by the insured. In the case at bar, on the other hand, the insureds began their alleged infringement before entering the insurance policy, voluntarily continued these activities even after receiving accusations of patent infringement, and then entered into the insurance policy. The loss

in progress doctrine was designed for cases just like the one before the Court and is based on equitable principles. The doctrine precludes a party from voluntarily engaging in an activity that gives rise to an accusation of wrongdoing and potential legal liability, and then purchasing insurance so that it may shift financial responsibility for its conduct and then continue to engage in the offending activity.

A third distinction between this case and *Montrose* is that in *Montrose* it appears that both the insurers and insured were aware of the potential litigation upon the insured's entrance into the policy. *See Montrose*, 42 Cal.Rptr.2d 324, 913 P.2d at 882–83, 883 n. 7. Therefore, the California Court's conclusion that the uncertainty of the outcome of the insureds' litigation created an *insurable* risk, *see id.*, 42 Cal.Rptr.2d 324, 913 P.2d at 906, can be understood to mean that a party may obtain coverage for litigation as long as *the insurer* knows that the policy is meant to cover that litigation. In the case at bar, however, Defendants did not inform the Insurers of the potential underlying litigation when they purchased their policy,[6] and therefore that litigation is not the risk for which Defendants did in fact obtain insurance. *Cf. Burch v. Commonwealth County Mut. Ins. Co.*, 450 S.W.2d 838, 840 (Tex.1970) ("If [an insured] applies for and obtains an antedated policy knowing that a loss has already occurred during the policy period, his failure to disclose the facts constitutes fraud that would enable the insurer to set aside the contract"). The loss that Defendants claim

---

**5.** In its prior Order, the Court ruled that it must follow federal law in determining whether the dispute was ripe but noted that state law would determine the substantive issue of actual coverage.

**6.** Defendants do not contend that they informed the Insurers of the potential litigation. Instead, they argue that they did not know about Koenig's claims until they were served in that lawsuit in December 1993, after the effective date of the policy. *See* Response, at 10 (citing Fugro's Response to Koenig's Motion for Partial Summary Judgment ["Response to Koenig's Motion"], Exhibit D to Response [Doc. # 18], at 3–4). However, in their response in the underlying suit, Defendants indicate that they were aware of Koenig's claims in August 1992, but thought that the

dispute had been resolved because Koenig did not respond to a letter sent by Fugro in November 1992, proposing a settlement. *See* Response to Koenig's Motion, at 3–4. Defendants argue in the underlying suit that "[t]he first time Fugro knew anything about Koenig's *renewed* assertion of his patent was when the complaint was served over one year later in December 1993." *Id.* (emphasis added). Thus, Defendants do admit that they, or at least Fugro, who purchased the policy, knew of the claim. The Court is not persuaded by Defendants' argument that, because they had attempted to resolve the claim, they did not need to inform the Insurers of the potential claim and nevertheless later be covered for activities that were continuations of those on which Koenig's initial accusations were based.

was covered in this case is not the risk of their own liability in the underlying litigation. Instead, the loss is the injury to the third party created by the alleged patent infringement itself. If that injury existed at all, it existed before Defendants entered their policy with the Insurers and is therefore precluded under the loss in progress doctrine.

■ Defendants also cite *Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172 (6th Cir.1993), another case involving a dispute over coverage for liability and defense costs in third party environmental cleanup litigation. Defendants claim that *Inland* establishes the proposition that a fact question, not appropriate for decision on summary judgment, exists as to whether an "insured is aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for." *Id.* at 178. In *Inland Waters*, however, the loss which the insured claimed not to know about when it entered into its insurance policy was soil and groundwater contamination that resulted from disposal drums leaking waste materials onto a third party's property. While that situation clearly raised a fact question regarding whether the insured knew of the leakage, in the case at bar, there can be no question that Defendants knew of their own activities and therefore knew all the operative facts giving rise to Koenig's claims. The Court rejects Defendants' contention that, until a court or jury determines that their activities constituted patent infringement or meet the requirements of any of the other causes of action alleged in the underlying litigation, they cannot know that there is a "loss." The relevant inquiry is whether they knew at the time they entered the insurance policy that they were engaging in activities for which they could possibly be found liable. In *Inland Waters*, the court concluded that the loss in progress doctrine would be triggered if the insured knew that the waste materials were leaking into the third parties' soil. The court's reasoning thus indicates that, if there were no doubt that the insureds knew about the leakage, the mere fact that the insureds' ultimate liability for that leakage had not yet been adjudicated would not preclude application of the loss in progress doctrine. In other words, the loss was the contamination, not the insureds' liability for the contamination. Likewise, in the case at bar, the disputed loss is the injury resulting from the allegations in the underlying lawsuit, not Defendants' potential liability for that injury.

Since the Court has determined that, under the loss in progress doctrine, the disputed claims are not covered as a matter of law under Defendants' insurance policy, Defendants' insurance policy is inapplicable to this loss. This case involves no issue of material fact requiring determination by a jury. Therefore, the Court finds it appropriate to dispose of this case through summary judgment.

## IV. *CONCLUSION*

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' **Motion for Summary Judgment** [Doc. # 16] is **GRANTED.** It is further

**ORDERED** that Defendants' **Motion to Dismiss and Alternatively to Continue Plaintiffs' Motion for Summary Judgment Pursuant to Rule 56(f)** [Doc. # 17] is **DENIED.** It is further

**ORDERED** that Defendants' **Cross-Motion for Partial Summary Judgment** [Doc. ¶ 18] is **DENIED.** It is further

**ORDERED** that Plaintiffs' request for attorneys' fees is **DENIED.** It is further

**ORDERED** that Plaintiffs' request for recoupment of defense costs expended in defending the underlying suit is **DENIED** since Plaintiffs have not submitted evidence showing that they have incurred any such costs.