## MATAGORDA VENTURES, INC., et al., Plaintiffs,

v.

## TRAVELERS LLOYDS INSURANCE COMPANY and Farmington Casualty Company, Defendants.

### No. CIV.A.H–98–4213.

United States District Court, S.D. Texas, Houston Division.

March 7, 2001.

---

Stewart A. Feldman, Feldman & Associates, Houston, TX, for plaintiffs.

Michael Patrick Morris, Tekell Book Matthews and Limmer, Houston, TX, Christopher C. Loeber, Morristown, NJ, William T. Corbett, Jr., Drinker Biddle, et al., Florham Park, NJ, for defendant.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Matagorda Ventures, Inc. and James Dale Birdsong, Jr., have moved for reconsideration of this court's ruling on the cross-motions for summary judgment. In that ruling, this court granted Travelers' motion for summary judgment and denied Matagorda Ventures's and Birdsong's motion. (Docket Entry No. 61). After reviewing the motion to reconsider, the response, the reply, and the applicable law, this court DENIES the motion to reconsider. Plaintiffs' main contentions are addressed below.

## I. Standard of Review

Plaintiffs characterize their motion for reconsideration as filed under Federal Rule of Civil Procedure 54. Under Rule 54(b), this court has discretion to revise its orders prior to entry of final judgment. "Any order which ... adjudicates fewer than all the claims or rights or liabilities of fewer than all the parties ... is subject to revision at any time before the entry of [final] judgment." FED. R. CIV. PRO. 54(b). A final judgment in this case has not yet been entered. Plaintiffs' motion is not filed under Rules 59 or 60, which apply only to final judgments. *See* FED. R. CIV. PRO. 59, 60; *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1472 (4th Cir.1991). This court's order signed on December 7, 2000, was an interlocutory order, subject to revision, on motion or *sua sponte,* before entry of a final judgment. This court addresses plaintiffs' principal claims on the merits.

## II. The Issue of the Scope of the First Publication Exception

■ In their motion to reconsider, plaintiffs renew their argument, rejected by this court in its original ruling, that the "first publication" exclusion applies only to "advertising injuries" arising from the publication of material that is slanderous, libelous, or disparaging, or that violates privacy. Plaintiffs acknowledge that several other courts have rejected this same argument and held that the "first publication" exclusion also applies to the other two sources of "advertising injury" identified in the Policy language, misappropriation and infringement. *See, e.g., Applied Bolting Technology Products, Inc. v. U.S. Fidelity & Guar. Co.,* 942 F.Supp. 1029 (E.D.Pa.1996); *Tradesoft Technologies, Inc. v. Franklin Mut. Ins. Co., Inc.,* 329 N.J.Super. 137, 746 A.2d 1078, 1084 (2000) (supporting reasoning of *Applied Bolting* ); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.,* 1999 WL 1072819, *1 (S.D.N.Y.1999) (same).

The Policy defined "advertising injury" as injury caused by specified offenses "committed in the course of advertising your goods, products, or services." A covered "advertising injury" must arise out of one or more of four specified offenses:

 a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's

or organization's goods, products or services;

b.  Oral or written publication of material that violates a person's right of privacy;

c.  Misappropriation of advertising ideas or style of doing business; or

d.  Infringement of copyright, title or slogan.

(Docket Entry No. 31, Ex. I, p. 524, 26).

The "first publication" exclusion states: "[t]his insurance does not apply to: 'advertising injury' ... [a]rising out of the oral or written publication of material whose first publication took place before the beginning of the policy period ...." (Docket Entry No. 31, Ex. I, p. 518).

In holding that the first publication exclusion covers all of the four offenses from which an advertising injury can arise, this court quoted from an opinion involving identical policy language, *Applied Bolting.* That opinion stated as follows:

[a]dvertising injury' is defined by the four, not two, offenses expressly set forth in the policy ... The first-publication exclusion bars coverage for 'advertising injury ... [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period' ... The exclusion must be read to give effect to the plain meaning of 'advertising injury.' When that is done, it is certainly irrelevant that some of the language in the exclusion happens to match some of the words in subparts (a) and (b) of the definition of "advertising injury" but not match some of the language in subparts (c) and (d). Accordingly, I find that the first-publication exclusion applies to all of the offenses listed in the four-subpart definition of 'advertising injury' ....

*Applied Bolting,* 942 F.Supp. 1029, 1037 (E.D.Pa.1996)

This court continues to find this reasoning, and the plain meaning on which it rests, persuasive. In the Travelers Policy, as well as in the insurance policy at issue in *Applied Bolting,* the "first publication" exclusion placed the term "advertising injury" in quotation marks. This punctuation sets the term off as a defined term in the Policy. The "Definitions" section of the Policy specifically defines "advertising injury" as injury arising from four specified categories of offenses, not two. Two of the four listed offenses are limited to "publication of oral or written material"; the other two listed offenses, misappropriation and infringement, include both published and nonpublished forms.

Under the Policy, "advertising injury" can arise from misappropriation or infringement without the necessity of publication; "advertising injury" arising from slander, business disparagement, or invasion of privacy is limited to that arising from publication of oral or written material. The offenses of misappropriation and infringement may give rise to covered "advertising injury," whether or not the alleged misappropriation or infringement is in the form of published materials. This broader coverage for "advertising injury" arising from misappropriation or infringement, extending to published material as well as other forms, is consistent with the application of the first publication exclusion.

When, as here, the alleged misappropriation arises from written published materials, the first publication exclusion applies. If the misappropriation or infringement does not arise from the publication of oral or written material, it would still fall within the Policy definition of "advertising injury," but the first publication exclusion would be irrelevant and inapplicable.

Plaintiffs' proffered interpretation makes the Policy inconsistent. Under plaintiffs' approach, the Policy would cover misappropriation arising from oral or

written publication of materials, but would not exclude coverage even if the oral or written publication took place before the Policy period began. Plaintiffs' approach would be reasonable if the Policy limited "advertising injury" arising from misappropriation or infringement to nonpublished materials. If the Policy only covered nonpublished materials that misappropriate or infringe, then the first publication exclusion should not apply. However, that is not what the Policy says. Instead, the Policy provides that "advertising injury" can arise from both published and nonpublished materials that misappropriate or infringe. When the "injury" arises from published materials, the plain meaning of the Policy makes the first publication exclusion applicable. This interpretation is consistent with the plain meaning of the Policy and with the words and punctuation used to convey that meaning.[1]

Plaintiffs contend, in the alternative, that even if their interpretation is not the best interpretation of the exclusion, the fact that some district courts have held in favor of their position makes the Policy "ambiguous" as a matter of law because it is "susceptible to more than one reasonable interpretation." (Docket Entry No 62, p. 5). Plaintiffs contend that the Policy should therefore be construed in favor of their position, citing the rule that a court must accept the insured's "construction of an exclusionary clause as long as that construction is not unreasonable." *National Union Fire Ins. Co. of Pittsburgh, Pa. v.*

*Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991).

A split of authority among courts as to the interpretation of policy language does not necessarily make that language ambiguous. *See H.E. Butt Grocery Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 150 F.3d 526, 534 (5th Cir. 1998); *Union Pacific Resources Co. v. Aetna Cas. & Sur. Co.,* 894 S.W.2d 401, 405 (Tex.App.-Fort Worth 1994, writ denied) (holding that conflicting legal authority concerning scope of coverage was insufficient to create an "ambiguity" in the policy). This court declines to adopt plaintiffs' suggestion that the presence of split authority on this question necessarily creates ambiguity. This court concludes that the "first publication" exclusion applied to all the forms of "advertising injury" defined in the Travelers Policy. The motion for reconsideration on this basis is DENIED.

### III. The Issue of the Applicability of the "Known Loss" or "Fortuity" Doctrine

Plaintiffs take issue with this court's characterization of the "known loss" or "fortuity" doctrine. Plaintiffs assert that the "known loss" doctrine "protects against previously incurred losses, not potentially previously incurred, and not yet legally adjudicated or even legally pursued, claims." (Docket Entry No. 62, p. 16). Plaintiffs' argument is not persuasive.

1. Plaintiffs assert that this court's holding is contrary to the holding of another case in the Southern District of Texas, *Martin's Herend Imports, Inc. v. Twin City Fire Ins. Co.,* 2000 WL 33795043, 2000 U.S. Dist. Lexis 8690 (S.D.Tex.2000). Although *Martin's Herend* did express the view that *Irons Home Builders Inc. v. Auto-Owners Ins. Co.,* 839 F.Supp. 1260 (E.D.Mich.1993) was more persuasive than the *Applied Bolting* case, *Martin's Herend*

did not call for analysis of the specific issues at issue in the present case, and such analysis was not provided. *Martin's Herend* involved neither an interpretation of "advertising injury" nor an interpretation of a "first publication" exclusion. Instead, it involved an interpretation of a "knowing or false publication" exclusion in the context of coverage for a "personal injury." *Id* at 26–27.

A virtually identical argument was addressed and rejected in *Franklin v. Fugro–McClelland (Southwest), Inc.,* 16 F.Supp.2d 732, 735 (S.D.Tex.1997). In *Franklin,* the court stated:

> ... in the case at bar, Defendants' activities for which they claim liability coverage began well before their insurance policy was purchased. Defendants' alleged wrongful activities began in 1991, or at the latest in 1992, but the insurance policy was not purchased until 1993. Therefore, the "loss in progress" doctrine precludes coverage for the claims asserted against them.

Defendants argue, however, that this doctrine should not apply here because, at the time their insurance policy was purchased, they did not have a known loss. Instead, they contend, since the underlying dispute had not yet been adjudicated, at the time the policy was purchased they had merely a potential loss. Defendants attempt to distinguish *Two Pesos* on the ground that, in that case, underlying liability had already been legally established by the time Two Pesos purchased its policy. The Court is not persuaded by this distinction. The *Two Pesos* court did not base its conclusion that a known loss had already occurred on the fact that the underlying lawsuit had been adjudicated. Instead, the court explained that "the risk of liability was no longer unknown because injuries resulted when Two Pesos first copied Taco Cabana's trade dress." *Id.* (emphasis added). In other words, the court recognized that Two Pesos first knew of the allegedly covered loss at the time it performed its infringing actions, not at the time that infringement was adjudicated.

*Id.* at 735. *See also Essex Ins. Co. v. Redtail Products, Inc.,* 1998 WL 812394, *4 (N.D.Tex.1998) (supporting reasoning of *Franklin* ); *Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.,* 2000 WL

1875875, *10 (Ill.App. 1st Dist.2000) (same).

As *Franklin* makes plain, the crucial issue is not whether liability had already been adjudicated against Matagorda Ventures and Birdsong for misappropriation when they became Policy insureds. Rather, "[t]he relevant inquiry is whether [the insureds] knew at the time they entered the insurance policy that they were engaging in activities for which they could possibly be found liable." *Id.* at 737. In this case, as in *Franklin,* the insureds began the activities for which they claim liability coverage before entering the insurance policy. After receiving a demand letter warning them of their potential liability, they then purchased the insurance at issue, without disclosing the demand letter or the underlying activities to the insurer. The motion for reconsideration on this basis is DENIED.

## IV. The Issue of Plaintiffs' Response to the Demand Letter

Plaintiffs suggest in their motion for reconsideration that this court has "silently ruled" that Megasaurus's efforts to address the concerns raised in the July 2, 1997 demand letter from Movado Group were "of no moment." (Docket Entry No. 62, p. 16–17). Because this court did not explicitly address the issue in its previous memorandum, it does so here.

Plaintiffs allege that they believed that their dispute with Movado Group had been resolved by August 1997, when they were added as insureds to the Travelers Policy. Plaintiffs argue that this belief relieved them of any duty to notify Travelers of the claims asserted in the Movado Group demand letter or of the activities that triggered the demand letter. The record and legal authorities contradict plaintiffs' argument.

Counsel for plaintiffs, Stewart Feldman testified that following his first conversation with Mark Englemann, representing Movado Group, in July 1997, Feldman recommended to Birdsong and Ronald Doohaluk that they change the wristwatch.com site. (Docket Entry No. 31, Ex. S, Deposition of Feldman, p. 23). Feldman testified that he telephoned Englemann again on August 15, 1997, but did not recall whether he actually spoke to Englemann on that occasion or merely left a voice mail message. (*Id.* at 28). Feldman stated that he told Englemann that his clients had "made substantive or significant ... changes to the web site," which he hoped "addressed all or most of [Englemann's] bona fide concerns," and that "[i]f there is anything else that is of any great concern to you, let me know." (*Id.*). The record does not reveal whether or how Englemann responded. Feldman acknowledged that "[i]t's not as if we reached agreements on all of the issues and it was resolved." (*Id.* at 50). The record contains no evidence of any written communication between Feldman and Englemann. It is undisputed that the Movado Group did not withdraw the demands it had asserted in its July 2, 1997 letter.

This record does not support the argument that plaintiffs resolved the dispute with the Movado Group by August 17, 1997, the date they obtained insurance coverage by becoming additional insureds on the Policy. At most, the record shows that Feldman made an attempt to resolve the issue by one or two telephone conversations communicating that some undescribed changes had been made to the web site. As the court stated in *Franklin*, 16 F.Supp.2d at 737, n. 6, "[t]he court is not persuaded by Defendants' argument that because they had attempted to resolve the claim, they did not need to inform the Insurer of the potential claim and nevertheless later be covered for activities that were continuations of those on which [the underlying plaintiff's] initial accusations were based."

Plaintiffs assert that this court has "*de facto*, determined that, once Megasaurus, Inc. was alerted to potential problems concerning Movado via letter, no entity, formed or unformed, related or unrelated, could ever obtain advertising insurance for itself as a result of wristwatch.com's operations." (Docket Entry No. 62, pp. 17–18). This statement misstates this court's holding. This court addressed the consequences of facts shown in the summary judgment record. Undisputed facts showed that when plaintiffs became insureds, they did not inform Travelers of the potential claims asserted in the Movado Group demand letter. Undisputed facts showed that plaintiffs became additional insureds under the Policy, which covered advertising injury arising out of published material that misappropriated an advertising idea or style of doing business, but excluded coverage if the publication was before the Policy period began. Nothing in the holding based on the facts in the record precludes plaintiffs from obtaining insurance for "advertising injury" arising from material published after the Policy period began.

In addition, this court ruled only on the Movado Group claims in this lawsuit. This court noted with respect to the separate lawsuit filed by Swatch Group that "[t]he record does not reveal whether Matagorda Ventures, Watch Wholesalers, or Birdsong published material implicated in the *Swatch Group* lawsuit before the beginning of the Policy period ... the applicability of the 'first publication' exclusion and the 'known loss' doctrine to the *Swatch Group* claims is unclear." (Docket Entry No. 61, p. 33).

This court DENIES the motion for reconsideration on the basis that plaintiffs believed they had responded to the de-

mand letter they received the month before they became additional insureds on the Policy.

## V. The Relationship of Movado Group's Causes of Action to the Material on the Web Site

Plaintiffs dispute that "all of the causes of action asserted in Movado Group complaint arose from the content of, and information posted on, the wristwatch.com site." Plaintiffs attempt to distinguish between "advertising injuries" arising from the sale of watches and "advertising injuries" arising from the content of, and information posted on, the wristwatch.com web site.

The undisputed evidence in the summary judgment record showed that all the watches plaintiffs sold relevant to this lawsuit were sold by way of the wristwatch.com site. The record discloses no other form of advertisement used to sell the watches. The Policy provides coverage for advertising injury "caused by an offense committed in the course of *advertising* your goods, products, or services ...." (Docket Entry No. 31, Ex. I, p. 517) (emphasis added). If plaintiffs are arguing that the *Movado Group* complaint alleges injuries from the sale of watches not resulting from advertising, such allegations would appear to be outside the Policy. This court DENIES the motion for reconsideration on this ground.

## VI. Conclusion

This court DENIES Matagorda Ventures's and Birdsong's motion to reconsider. This court ORDERS Travelers to submit a proposed form of judgment within ten days from the date this Memorandum and Order is entered.