RLI INSURANCE COMPANY,
Plaintiff,

v.

MAXXON SOUTHWEST, INC.,
et al., Defendants.

No. CIV.A.3:01–CV–2536–G.

United States District Court,
N.D. Texas,
Dallas Division.

April 22, 2003.

Order Denying Reconsideration
June 13, 2003.

James Alan Pikl, Law Office of James A Pikl, McKinney, TX, for General Supply Deck and Floor Underlayment Co., Inc.

Leslie Echols Pitts, Fanning Harper & Martinson, Dallas, TX, Patrick J Wielinski, Cokinos Bosien & Young, Arlington, TX, for Gypsum Floors of Tex., Inc.

Greg K Winslett, Quilling Selander Cummiskey & Lownds, Dallas, TX, for RLI Ins. Co.

## MEMORANDUM ORDER

FISH, Chief Judge.

Before the court are: (1) the motion of the plaintiff RLI Insurance Company ("RLI") for partial summary judgment, and (2) the cross motion of the defendants Maxxon Southwest, Inc. ("MSI"), Gypsum Floors of Texas, Inc. ("Gypsum Floors"), Raymond Brekke ("Brekke"), and General Supply Deck and Floor Underlayment Company ("General Supply")[1] for partial summary judgment. For the reasons discussed below, RLI's motion is granted, while the defendants' motion is denied.

---

1. On December 20, 2001, General Supply filed a notice with the court stipulating that, although named as a defendant, it will not assert any defense in the case and will be bound by whatever coverage determination is made by the court. *See* Stipulation, December 20, 2001.

## I. BACKGROUND

This is an insurance coverage dispute. RLI brought this suit seeking a declaration that it does not owe a duty of defense and indemnity, under two commercial insurance policies,[2] in connection with a civil suit brought against MSI, Gypsum Floors, and Brekke. *See* Plaintiff's Brief in Support of Motion for Partial Summary Judgment ("Plaintiff's Motion") at 1. MSI is a Texas-based distributor of gypsum cement, a component used in floor underlayment applications. *Id.* at 3. Gypsum Floors is Texas-based gypsum cement dealer. *Id.* Brekke, at all times relevant to the instant complaint, was the president, director, and shareholder of MSI, as well as the owner and chief operator of Gypsum Floors. *Id.* Brekke is a resident and domiciliary of Dallas, Texas. Complaint ¶ 4.

On December 20, 2000, General Supply, another dealer of MSI gypsum cement, filed suit against MSI, Gypsum Floors, Brekke, and the Maxxon Corporation ("Maxxon")[3] for alleged violations of the Robinson–Patman Act and conspiracy to violate federal antitrust laws. *See* Plaintiff's Motion at 3; Antitrust Complaint ¶¶ 70–78. In its complaint, General Supply asserted that, beginning some time prior to 1996, Brekke, "the president of

MSI and owner of [Gypsum Floors], intentionally and knowingly set up [a] discriminatory pricing [scheme] used by MSI with the purpose of allowing his dealer, [Gypsum Floors], to gain a price advantage over [its] competition." Antitrust Complaint ¶¶ 47, 52. Under this alleged scheme, MSI sold Gypsum Floors various grades of gypsum cement at a substantially lower price than other dealers, along with special unpublished discounts, so that Gypsum Floors could underbid competitors such as General Supply on construction projects. *See id.* ¶¶ 47–51. As a result, General Supply claims to have paid MSI significantly higher prices than Gypsum Floors for the same quantity, quality, and grade of gypsum cement, "shipped on the same day or reasonably [contemporaneous] therewith." *See id.* ¶¶ 33–34. General Supply sought actual and treble damages, injunctive relief, and attorney fees. Plaintiff's Motion at 3; Antitrust Complaint ¶¶ 79–88.

On or about June 27, 2001, MSI, Gypsum Floors, and Brekke requested that RLI defend them in the General Supply lawsuit. Plaintiff's Motion at 3. Although RLI initially declined to defend all three defendants,[4] *see* Letter to Ray Brekke,

2. On or about April 1, 2000, RLI issued Commercial Liability Policy Number OUL0044908, effective April 1, 2000 to April 1, 2001, to Gypsum Floors. *See* Plaintiff's First Amended Complaint for Declaratory Judgment ("Complaint") ¶ 12; Commercial Umbrella Liability Policy, *located in* Appendix in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Appendix") as Exhibit B. On or about April 1, 2001, RLI renewed this policy under Commercial Liability Policy Number OUL0048606, which extended coverage to April 1, 2002. *See* Complaint ¶ 13; Commercial Umbrella Liability Policy, *located in* Plaintiff's Appendix as Exhibit C. MSI and Brekke are named as co-insureds under both RLI policies. *See* Complaint ¶¶ 12, 13; *see also* Plaintiff's Appendix, Exhibits B and C.

3. Maxxon is a Minnesota-based manufacturer and supplier of gypsum cement. *See* Complaint for Violation of Federal Antitrust Laws in Civil Action Number 3:00–CV–2745–G ("Antitrust Complaint") ¶¶ 7, 14, *located in* Plaintiff's Appendix as Exhibit A. At all times relevant to this dispute, MSI was a distributor of Maxxon gypsum products. *See id.* ¶ 16. Maxxon, however, has not been named as a party in this case.

4. Maxxon, the fourth defendant, was not a named insured under the two RLI policies and, therefore, was not involved in the dispute between RLI and MSI, Gypsum Floors, and Brekke over the duty to defend.

July 18, 2001, *located in* Plaintiff's Appendix as Exhibit D, RLI subsequently reconsidered that decision and agreed to assume their defense on July 23, 2001. *See* Letter to Ray Brekke, July 23, 2001, *located in* Plaintiff's Appendix as Exhibit E. RLI, however, fully reserved the right to withdraw its defense, deny coverage, and seek a declaratory judgment of no coverage. Plaintiff's Motion at 3. On November 30, 2001, at 5:00 p.m. central standard time, RLI officially withdrew from the defense of MSI, Gypsum Floors, and Brekke, and filed this action for declaratory relief. *Id.*

In April, 2002, General Supply and all named defendants settled the antitrust suit. Plaintiff's Motion at 3; *see also* Alternative Dispute Resolution Summary, April 5, 2002; Agreed Order of Dismissal with Prejudice, April 22, 2002. Pursuant to a written settlement agreement, Maxxon and Gypsum Floors agreed to jointly pay 600,000 dollars to General Supply—in addition to a 400,000 dollar settlement credit offered by Maxxon toward the purchase of its gypcrete products—in order to resolve both the pending antitrust suit and a related state court suit. *See* Plaintiff's Motion at 3; Release and Settlement Agreement at 3–4, *located in* Plaintiff's Appendix as Exhibit F. On April 10, 2002, Gypsum Floors tendered a check to General Supply in the amount of 300,000 dollars. *See* Plaintiff's Appendix, Exhibit G. On September 23, 2002, RLI and the defendants in this matter each moved for partial summary judgment[5] on the issue of RLI's

duty to defend and indemnify in connection with the General Supply litigation. *See* Docket Sheet.

## II. *ANALYSIS*

RLI's motion for partial summary judgment, which is supported by citations to the record, argues that there are no genuine issues to support a conclusion that it owed MSI, Gypsum Floors, or Brekke a duty of defense or indemnity arising from the General Supply Antitrust Complaint. *See* Plaintiff's Motion at 1–2, 4. Specifically, RLI argues that the activities alleged in the underlying complaint constitute a "loss-in-progress," which would preclude coverage under the fortuity doctrine. *See* Plaintiff's Motion at 1–2, 10–11; *see also* Plaintiff's Reply Brief in Support of its Motion for Partial Summary Judgment ("Plaintiff's Reply") at 6–8. The court agrees.

### A. *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[6] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a rea-

---

**5.** While both motions are for partial summary judgment, RLI and the defendants agree that a ruling in favor of either motion would dispose of all claims presently before the court. The designation of "partial" merely reflects RLI's decision not to address each and every provision in the relevant policies, *see* Plaintiff's Motion at 2, and the defendants' election to leave the specific amount of indemnity and attorney fees for a later determination by the court. *See* Defendants and Counter–Plaintiffs Maxxon Southwest, Inc.'s, Gypsum Floors of

Texas, Inc.'s, and Raymond Brekke's Brief in Support of Motion for Partial Summary Judgment ("Defendants' Motion") ¶ 1.

**6.** The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986).

sonable jury could return a verdict for the nonmoving part[ies]." *Id.* The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. To carry this burden, the "opponent[s] must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

While all of the evidence must be viewed in a light most favorable to the motion's opponents, *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden. *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir.1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponents fail to establish the existence of an element essential to their case and as to which they will bear

the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *The Fortuity Doctrine*

■ The fortuity doctrine precludes insurance coverage—and thus negates a duty to defend or indemnify—"where the insured is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased." *Two Pesos, Inc. v. Gulf Insurance Company*, 901 S.W.2d 495, 501 (Tex.App.—Houston [14th Dist.] 1995, no writ) (citation omitted). The doctrine has its roots in the premise that, because insurance policies are designed to insure against fortuities, insuring a certainty constitutes fraud. *Scottsdale Insurance Company v. Travis*, 68 S.W.3d 72, 75 (Tex.App.—Dallas 2001, pet. denied); see also *Burch v. Commonwealth County Mutual Insurance Company*, 450 S.W.2d 838, 840–41 (Tex.1970) ("If [an insured] applies for and obtains an antedated policy knowing that a loss has already occurred ..., [the] failure to disclose [that fact] constitutes fraud that would enable the insurer to set aside the contract"). A party, therefore, may not "voluntarily engag[e] in an activity that gives rise to an accusation of wrongdoing and potential legal liability, and then purchas[e] insurance so that it may shift financial responsibility for its conduct." *Franklin v. Fugro–McClelland (Southwest), Inc.*, 16 F.Supp.2d 732, 736 (S.D.Tex.1997). Texas courts have long recognized the doctrine as an inherent requirement of all risk insurance policies and as a standard component of Texas insurance law. See *Travis*, 68 S.W.3d at 75; *Two Pesos*, 901 S.W.2d at 501–502; *Mason Drug Company, Inc. v. Harris*, 597 F.2d 886, 887 (5th Cir.1979). When reviewing alleged violations of the fortuity doctrine, "[t]he relevant inquiry is whether [the insureds] knew at the time they entered the insurance policy that they were engaging in activities for which they

could possibly be found liable." *Franklin,* 16 F.Supp.2d at 737.

■ The complaint in the underlying antitrust suit presents allegations of wrongdoing begun well before the purchase of either RLI policy. In particular, the complaint avers that since at least 1996, MSI, Gypsum Floors, and Brekke intentionally and knowingly engaged in a discriminatory pricing scheme in order to give Gypsum Floors a price advantage over its competitors. Antitrust Complaint ¶¶ 32, 47–53. It is undisputed that RLI issued the first commercial liability policy to MSI, Gypsum Floors, and Brekke on or before April 1, 2000 and that this policy was effective from April 1, 2000 to April 1, 2001.[7] *See* Plaintiff's Motion at 2, 10; Appendix to Defendants and Counter–Plaintiffs' Brief in Support of Motion for Partial Summary Judgment ("Defendants' Appendix") at 50; Plaintiff's Appendix, Exhibit B. It is also undisputed that the second RLI policy acted as a renewal of the first policy and simply extended the same coverage to April 1, 2002. *See* Plaintiff's Motion at 2; Defendants' Appendix at 7; Plaintiff's Appendix, Exhibit C. The allegations in the underlying complaint, therefore, pertain to conduct which began approximately *four years* prior to the purchase of insurance from RLI.

The defendants nevertheless argue that, irrespective of the temporal disparity between the onset of alleged antitrust violations and commencement of RLI coverage, the fortuity doctrine is inapplicable in the case *sub judice.* *See* Defendants and Counter–Plaintiffs' Brief in Response to Plaintiff's Motion for Partial Summary Judgment ("Defendants' Response") ¶¶ 20, 28. According to the defendants, there are "no allegations in the [underlying complaint] that [they] knew or should have known [of] a loss with respect to [General Supply]" or that they received "any prepolicy notice ... or [had] any independent knowledge ... of the subject loss." *Id.* ¶ 25. The defendants further argue that, even if RLI could prove that they "intended the actions on which the [underlying suit] is based, ... such cannot in and of itself be used to establish that they *knew* those actions created a substantial likelihood that the underlying claim would be brought." *Id.* ¶ 27 (emphasis added). Consequently, the defendants conclude, the alleged antitrust violations do not constitute a "loss in progress" and, therefore, cannot bar RLI's duty to defend or indemnify. *See id.* ¶¶ 20–22, 28. The defendants are in error.

The key factor in determining coverage under the fortuity doctrine is not, as defendants contend, whether the insureds had actual knowledge of the underlying loss and potential liability, *see* Defendants' Response ¶ 23, but rather if they knew at the inception of coverage "that they *were engaging in activities* for which they could possibly be found liable." *Franklin,* 16 F.Supp.2d at 737 (emphasis added). Here, the record clearly reflects that MSI, Gypsum Floors, and Brekke knew they were engaging in the conduct alleged by General Supply for several years prior to the commencement of either RLI policy. *See* Plaintiff's Reply at 7–8; Oral Deposition of Raymond Brekke, *located in* Appendix in Support of Plaintiff's Response to Defen-

---

7. Some of the papers filed by the defendants have indicated that the two RLI policies were issued on or about May 1, 2000 and May 1, 2001, respectively. *See, e.g.,* Defendants' Motion ¶¶ 4, 6. Defense counsel, however, later confirmed telephonically that any reference to the first of May as the inception date for either RLI policy is merely a typographical error and that the two policies were in fact effective beginning the first day of April in each respective year. Counsel for the defendants further confirmed that the policies would have been purchased immediately preceding the designated effective date.

dants' Motion for Summary Judgment at 193–222. It is simply irrelevant that the defendants may or may not have known of any particular loss suffered by General Supply or that their actions would ultimately result in the underlying lawsuit. The risk of potential injury to General Supply and other gypsum cement dealers was, or should have been, readily apparent to the defendants from the moment they formulated and employed the various dealer price lists. See *Essex Insurance Company v. Redtail Products, Inc.*, No. 3:07–CV–2120–D, 1998 WL 812394 at *5 (N.D.Tex. Nov.12, 1998); *Franklin*, 16 F.Supp.2d at 735; *Two Pesos*, 901 S.W.2d at 502. Moreover, affording coverage to the defendants would violate Texas public policy by allowing protection for a loss in progress and permitting insureds to insulate themselves from any future determination of wrongdoing arising out of pre-policy conduct. See *Essex*, 1998 WL 812394 at *5; *Franklin*, 16 F.Supp.2d at 736; *Two Pesos*, 901 S.W.2d at 502. The court therefore concludes that coverage for the General Supply litigation—as well as settlement arising therefrom—is precluded under the fortuity doctrine because the underlying antitrust claims constitute a loss in progress.[8] See *Travis*, 68 S.W.3d at 75; *Essex*, 1998 WL 812394 at *5. Accordingly, RLI's motion for summary judgment must be granted.

## III. CONCLUSION

For the reasons discussed above, RLI's motion for partial summary judgment is **GRANTED**, while defendants' motion for partial summary judgment is **DENIED**. Within ten days of this date, counsel for RLI shall submit a proposed form of judgment in conformity with this memorandum order.

**SO ORDERED.**

### ORDER

The defendant's motion to reconsider the memorandum order on cross motions for partial summary judgment, and in the alternative, motion for a new trial is **DENIED.**

**SO ORDERED.**

---

8. In light of this disposition, the court need not address RLI's other arguments in support of summary judgment.