SCOTTSDALE INSURANCE
COMPANY, Appellant,

v.

William Barrett TRAVIS, Maintenance,
Inc., Maintenance of Houston, Inc.,
Maintenance of Corpus Christi, Inc.,
South Texas Building Services, Inc.
and Richard R. Robinson, Appellees.

No. 05–99–01831–CV.

Court of Appeals of Texas,
Dallas.

May 29, 2001.

Rehearing Overruled July 2, 2001.

John C. Tollefson, Knox & Tollefson, P.C., Dallas, for appellant.

Richard G. Foster, Porter, Rogers, Dahlman & Gordon, P.C., San Antonio, Susan Johnson Foster, Dallas, for appellees.

Before Justices KINKEADE, MOSELEY, and FITZGERALD.

## NUNC PRO TUNC OPINION

Opinion By Justice KINKEADE.

Scottsdale Insurance Company ("Scottsdale") appeals a summary judgment granted in favor of South Texas Building Services, Inc. ("South Texas") and Richard R. Robinson, ordering that Scottsdale owes South Texas and Robinson a duty to defend them in a lawsuit filed by William Barrett Travis, Maintenance, Inc., Maintenance of Houston, Inc. ("Maintenance Houston"), and Maintenance of Corpus Christi, Inc. (collectively referred to as "Maintenance"). In three issues, Scottsdale contends the trial court erred in determining it had a duty to defend South Texas and Robinson because the allegations in the underlying petition arose out of a scheme that predated the inception of Scottsdale's insurance policy and the original petition did not present claims triggering Scottsdale's coverage. Scottsdale also argues the trial court erred in awarding attorney's fees. Because we conclude the terms of the policy and the fortuity doctrine exclude coverage, we reverse the trial court's judgment and render judgment that Scottsdale has no duty to defend South Texas and Robinson in the Mainte-

nance suit. We reverse the trial court's rulings on attorney's fees and remand the issue to the trial court for further consideration.

## Factual Background

Robinson began working as manager of Maintenance Houston, a janitorial service company, in the mid–1980s. Some time after resigning on July 8, 1993, Robinson formed South Texas, a new janitorial service company. Robinson filed the articles of incorporation for South Texas on July 23, 1993. South Texas purchased primary and excess insurance coverage from Scottsdale. The effective date of both policies was August 9, 1993.

On October 6, 1993, Maintenance filed suit against Robinson, alleging causes of action including tortious interference with contracts, misappropriation of trade secrets, breach of fiduciary duty, and conversion, all arising from Robinson's conduct in leaving Maintenance and starting South Texas. In later amended petitions, Maintenance added other defendants, including South Texas. The petition alleged in part that, while still employed by Maintenance, Robinson recruited Maintenance's employees and customers, made false accusations and began spreading ill-will among Maintenance's customers, and used his knowledge of Maintenance's customer lists and secrets to steal business for himself and his new company. The petition further alleged that "[a]lmost immediately" after Robinson's resignation, he conspired with Jim Swan, another defendant, to lock Maintenance out of its offices and deny it access to its files and records, thereafter setting up South Texas, the new competing company, in the offices that had formerly been leased by Maintenance.

South Texas and Robinson, as a principal of South Texas, demanded a defense from Scottsdale in the lawsuit filed by Maintenance. Instead of tendering a defense, Scottsdale sued South Texas and Robinson for declaratory judgment, asserting it did not owe a duty to defend under the policy. Scottsdale included Maintenance as defendants because of a potential indemnity issue. South Texas and Robinson counterclaimed, alleging Scottsdale breached its insurance contract by refusing to tender a defense. On cross-motions for summary judgment, the district court affirmed a court master's ruling that Scottsdale owed South Texas and Robinson a duty to defend. The trial court entered judgment ordering Scottsdale to tender a defense and awarding South Texas and Robinson attorney's fees incurred in the underlying litigation as well as the insurance coverage action. The trial court dismissed the issue of indemnity, determining it was not ripe for review. The trial court denied Scottsdale's request for attorney's fees against Maintenance. Scottsdale appealed the trial court's rulings on the duty to defend and attorney's fees issues.

## Standard of Review

■ The standards for reviewing a traditional summary judgment are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548. When, as in this case, both sides file motions for summary judgment and one is granted and one is denied, we review all questions presented and render the decision the trial court should have rendered. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999).

## Duty to Defend

In its first issue, Scottsdale contends the trial court erred in holding it had a duty to

defend because the alleged offenses occurred before the inception of the coverage and are, therefore, excluded as a matter of law by both the policy and the fortuity doctrine.

■ Whether an insurer owes its insured a duty to defend is determined only by the pleadings and the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (the "eight corners" rule). Pursuant to the eight corners rule, we examine the factual allegations in the underlying petition and the terms of the insurance policy to determine if any portion of the suit states a cause of action potentially covered by the policy. *Folsom Invs., Inc. v. Am. Motorists Ins. Co.,* 26 S.W.3d 556, 558–59 (Tex.App.—Dallas 2000, no pet.). If coverage is found for any portion of a suit, the insurer must defend the entire suit. *St. Paul Ins. Co. v. Tex. Dep't of Transp.,* 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). If a petition against an insured alleges only facts not covered or excluded by the policy, the insurer has no duty to defend. *Fid. & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982); *Folsom,* 26 S.W.3d at 559. We view the factual allegations in the petition liberally, resolving any doubt in favor of the insured. *McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.,* 7 S.W.3d 725, 728 (Tex.App.—Austin 1999, no pet.).

### The Fortuity Doctrine

■ Because the purpose of insurance is to protect insureds against unknown, or fortuitous, risks, fortuity is an inherent requirement of all risk insurance policies. *Two Pesos, Inc. v. Gulf Ins. Co.,* 901 S.W.2d 495, 502 (Tex.App.—Houston [14th Dist.] 1995, no writ). The fortuity doctrine precludes coverage for both a "known loss" or a "loss in progress." A "known loss" is

a loss the insured knew had occurred prior to making the insurance contract. *Burch v. Commonwealth Mut. Ins. Co.,* 450 S.W.2d 838, 840–41 (Tex.1970). A "loss in progress" occurs when the insured is, or should be, aware of an ongoing progressive loss at the time the policy is purchased. *Two Pesos,* 901 S.W.2d at 502. Insurance coverage is precluded where the insured is or should be aware of an ongoing progressive or known loss at the time the policy is purchased. *Id.* The doctrine has its roots in the prevention of fraud; because insurance policies are designed to insure against fortuities, fraud occurs when a policy is misused to insure a certainty. *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.,* 997 F.2d 172, 175–77 (6th Cir.1993).

■ In this case, Scottsdale contends both the terms of the policy and the fortuity doctrine preclude any duty to defend because the language in the petition alleges facts excluding coverage. Specifically, Scottsdale points to a provision in the policy providing that coverage is triggered "only if the offense was committed ... during the policy period." Additionally, the fortuity doctrine precludes coverage for an offense that was committed before the policy period, as either a loss in progress or a known loss. Scottsdale contends the underlying petition alleges facts showing the offense began before the effective date of the policies, thereby alleging facts that exclude coverage. We agree.

In this case, Maintenance's petition alleged that Robinson, along with other co-defendants, planned and began executing their scheme before August 9, 1993, the inception of Scottsdale's coverage. The specific provisions of the petition allege that "[p]rior to Robinson resigning he already had planned his new company, determined the customers he would take away from [Maintenance Houston], and de-

cided the means and methods of doing so." Specifically, according to the petition, before Robinson resigned, he and his co-conspirators:

undermined existing contracts Maintenance Houston had with employees and customers;

began directly competing with Maintenance Houston for its customers;

undermined the goodwill, name, and reputation of the company;

began implementing his plan with other defendants, resulting in the misappropriation of trade secrets, the lockout of Maintenance Houston from its office, and the stealing of Maintenance Houston's business.

The petition states that "[a]ll these actions were started while Robinson was employed in a fiduciary capacity as president of the company and a member of its board of directors." According to the petition, upon Robinson's resignation, he and his co-conspirators refused to return documents, contracts, records, and other items that were the property of Maintenance Houston, locked Maintenance Houston out of its office, and began to use the executed written contracts Maintenance Houston had with its customers.

■ All of these allegations pertain to Robinson's conduct before the inception of the insurance policy, and even before the named insured was formed as a corporation. The purpose behind the fortuity doctrine applies with full force in a case such as this, where a party attempts to purchase insurance against the consequences of his own ongoing wrongful conduct.

This case is similar to *Two Pesos*, wherein the appellate court held the insured, Two Pesos, was not covered under advertising/personal injury coverage for claims brought against it for trade dress infringement because the insured's wrongful acts began before the inception of the insurance policy. *Two Pesos*, 901 S.W.2d at 501. In *Two Pesos*, the insured, before buying the policy, had a judgment rendered against it for trade dress infringement for copying Taco Cabana's trade building decor. After Two Pesos purchased the policy, Taco Cabana again sued Two Pesos for damages because Two Pesos failed to change its building decor on some of its restaurants in accordance with the prior judgment. The court held the "risk of injury from continued infringement was readily apparent, or should have been." *Id.* The court went on to conclude that "affording coverage to Two Pesos would violate public policy by allowing protection for a known loss and permitting an insured to benefit from its wrongdoing." *Id.*

South Texas and Robinson argue the loss in progress doctrine does not apply in this case because South Texas and Robinson could not have "used" the information taken from Maintenance Houston until South Texas was a formed corporation. They argue that because the policy was purchased only fifteen days after South Texas was established as a corporation, anything Robinson did as a principal of South Texas had to have happened after the effective date of the policy. South Texas and Robinson attempt to distinguish *Two Pesos* by arguing the loss in that case had already been established in the prior suit and there was no longer a *risk* of liability. They contend that, in this case, no liability had been established and no actual loss had occurred before the inception of the insurance policy.

We are not persuaded by these arguments. In *Franklin v. Fugro-McClelland, Inc.*, 16 F.Supp.2d 732, 735 (S.D.Tex.1997), the defendants made a similar unsuccessful argument. *Franklin* arose out of a case involving allegations of patent in-

fringement, misappropriation of trade secrets, and other causes of action relating to the alleged theft of proprietary soil sampling information. *Id.* at 732. The insured claimed that allegations in the lawsuit triggered coverage under an advertising injury policy. The insurer claimed, among other things, that the fortuity doctrine precluded coverage because the alleged acts began before the inception of the policy. Citing *Two Pesos,* the insured argued the doctrine should not apply because, at the time the insurance policy was purchased, they did not have a known loss but merely a potential loss. The court rejected this argument, noting that the *Two Pesos* court did not base its conclusion that a known loss had already occurred on the fact that the underlying lawsuit had been adjudicated but, rather, on the fact that Two Pesos first knew of the loss at the time it performed its first infringing actions. *Id.* (citing *Two Pesos,* 901 S.W.2d at 502). Following *Two Pesos,* the *Franklin* court held the alleged injury began prior to the inception of the insurance coverage and therefore the fortuity doctrine precluded coverage. *Id.* at 735.

We agree with the *Franklin* court that *Two Pesos* does not stand for the proposition that an ongoing loss must be adjudicated before the insured can be charged with knowledge of the potential loss. The key question is whether the wrongdoing occurred before or after the purchase of the insurance. In this case, the allegations in the petition allege the wrongdoing began before the policy was purchased. Furthermore, because the petition alleges the acts involved were intentional, i.e., planning the scheme, spreading ill-will, taking customers and employees, misappropriating information, and locking Maintenance Houston out of its offices, we are not persuaded that, as South Texas argues, "there is no allegation that [South

Texas] knew it was engaged in activities for which it could possibly be held liable."

We conclude the allegations in the petition exclude coverage under both the specific terms of the insurance policy covering events occurring during the policy period and under the fortuity doctrine as a "loss in progress." Scottsdale has no duty to defend either South Texas or Robinson as a principal of South Texas in the underlying lawsuit.

## Attorney's Fees

■■■ Scottsdale also argues this Court should award attorney's fees to Scottsdale and reverse the attorney's fees award against Scottsdale. The Uniform Declaratory Judgments Act provides that a court may award costs and reasonable and necessary attorney's fees as are equitable and just, and the decision to grant or deny attorney's fees is within the trial court's sound discretion. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1986); *McLendon v. McLendon,* 862 S.W.2d 662, 672 (Tex.App.—Dallas 1993, writ denied). Under the Act, attorney's fees may be awarded to the non-prevailing party. *Tanglewood Homes Ass'n, Inc. v. Henke,* 728 S.W.2d 39, 45 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). In light of our disposition of this case, the trial court may wish to reconsider its rulings on attorney's fees. We therefore reverse the trial court's rulings on attorney's fees and remand the issues to the trial court for further consideration.

Because we hold Scottsdale does not owe South Texas and Robinson a duty to defend, we reverse the trial court's judgment and render judgment that Scottsdale owes no duty to defend South Texas and Robinson in the Maintenance litigation. We reverse the trial court's rulings on attorney's fees and remand the attorney's

fees issues to the trial court for further consideration.

Because of our disposition, we need not address the other issues raised in this appeal.