ROMAN CATHOLIC DIOCESE OF DALLAS, by and through Charles V. GRAHMANN, His Predecessors and Successors, as Bishop of the Roman Catholic Diocese of Dallas, Appellant,

v.

INTERSTATE FIRE & CASUALTY CO., Certain Underwriters at Lloyd's, London, Excess Insurance Co., Terra Nova Insurance Co., and Yasuda Fire & Marine Insurance Co., Appellees.

No. 05–03–00625–CV.

Court of Appeals of Texas, Dallas.

May 18, 2004.

---

Randal Mathis, Mark M. Donheiser, Mathis & Donheiser, P.C., for appellant.

Thad D. Spalding, Veronica Martinsen Bates, Hermes Sargent Bates, L.L.P., Mary Erlene Reyes, Hermes Sargent Bates, L.L.P. Cowles & Thompson, D. Bradley, Dickinson & Associates, P.C., Lori A. Watson, Law Office of Windle Turley, PC, Dallas, Catalina J. Sugayan, Lord, Bissell & Brook, Chicago, IL, for appellees.

Before Justices JAMES, WRIGHT, and BRIDGES.

## OPINION

Opinion By Justice JAMES.

Roman Catholic Diocese of Dallas (the Diocese) appeals the summary judgment entered in favor of Interstate Fire & Casualty Co., Certain Underwriters at Lloyd's London, Excess Insurance Co., Terra Nova Insurance Co., and Yasuda Fire & Marine Insurance Co. (Insurers). The Diocese brings three issues asserting the trial court erred in determining Insurers provided no liability insurance coverage for the Diocese's liability for sexual assaults committed by a priest. We reverse the trial court's judgment and remand the cause for further proceedings.

## BACKGROUND

Insurers, all of whom have written liability insurance policies for the Diocese, brought this declaratory judgment action against the Diocese to determine whether they owed a duty to indemnify the Diocese in the underlying lawsuit. In that lawsuit, John Doe XVII sued Father Patrick Lynch and the Diocese, alleging Lynch repeatedly molested Doe beginning in 1977. Doe also alleged that the Diocese had been aware of Lynch's sexual propensities since 1966 when it learned of his molesting a boy in a church. Doe asserted the Diocese's response to Lynch's behavior was to keep the matter confidential. According to Doe's petition, the Diocese simply placed a memo in Lynch's personnel file but did not send him for treatment or remove him from contact with boys. Doe asserted many causes of action against the Diocese on a variety of theories, including respondeat superior, agency, negligence in hiring and retaining Lynch, negligent supervision of Lynch, negligence in failing to ascertain Lynch's dangerous sexual tendencies, negligent failure to warn Doe and his family of Lynch's dangerous sexual propensities, breach of fiduciary duty, knowing participation in breach of fiduciary duty, fraud, conspiracy, and intentional infliction of emotional distress. Doe also alleged a variety of intentional torts against Lynch. The underlying case is pending in the trial court.

In the declaratory judgment action, Insurers alleged the policies do not provide coverage for any judgment that may be rendered in the underlying case because the policies do not cover liability from intentional, knowing, or grossly negligent torts, and Doe's negligence claims are "inextricably intertwined" with the intentional tort claims against Lynch, and thus none of the claims constitute an "occurrence" under the policies. Insurers also alleged the policies do not provide coverage for any acts of sexual molestation occurring before the first of their policies went into effect. Insurers moved for summary judgment under rule of civil procedure 166a(c) requesting the trial court to declare Insurers had no duty to indemnify the Diocese for any judgment rendered in the underlying case. The trial court granted the motion for summary judgment.

## STANDARD OF REVIEW

The standard of review for summary judgments is well known. *See S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). A party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Kang v. Hyundai Corp.*, 992 S.W.2d 499, 501 (Tex.App.-Dallas 1999, no pet.).

■■■ The duty to indemnify is a distinct and separate duty from the duty to defend. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002). Although litigation on the duty to indemnify is often pursued after liability against the insured has been established in the underlying case, the insurer can resolve the indemnity issue before the establishment of liability in the underlying case by proving coverage is impossible in the underlying case. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex.1997) (per curiam). In *Griffin*, the defendant in the underlying case was driving his car when two passengers fired shots at the plaintiff as he walked down the street, wounding him. *Id.* at 82. The plaintiff sued the defendant alleging he was negligent in supervising his passengers. The defendant's automobile insurance policy provided coverage for liability from "auto accident[s]."

The supreme court held summary judgment on the insurer's declaratory judgment action was correct and there was no coverage as a matter of law under the policy because "[n]o fact can be developed in the underlying tort suit that can transform a drive-by shooting into an 'auto accident.'" *Id.* at 84.[1] Thus, under *Griffin*, for Insurers to be entitled to summary judgment, they had to establish as a matter of law that the judgment rendered in the underlying lawsuit could not fall within coverage under the policies.

## THE POLICIES

All of the policies at issue are excess liability policies. None provides a duty to defend. Under the policies, the Diocese is the "assured." The policies also provide that an employee falls under the definition of "assured" "while acting within the scope of his duties as such," and priests fall under the definition of "assured" "whilst acting within the scope of their duties on behalf of the Named Assured [the Diocese]." The parties do not dispute that, as a matter of law, Lynch was not acting within the scope of his duties as an employee or priest on behalf of the Diocese when he allegedly sexually molested Doe. Thus, the record establishes as a matter of law that Lynch was not an assured under the policies.

The liability clauses of the policies provide:

> Underwriters hereby agree ... to indemnify the Assured for all sums which

---

1. In discussing *Griffin*, Insurers state in their brief, "The Texas Supreme Court found that although the claimant alleged negligence and gross negligence, there was no duty to defend because the origin of claimant's damages was intentional behavior which was excluded from coverage." We disagree with Insurers' reading of *Griffin*. The supreme court made clear the incident did not constitute an occurrence because the drive-by shooting did not involve an "auto accident." The supreme court did not hold there was no occurrence because the incident involved intentional behavior.

the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law ... for damages ... on account of personal injuries ... suffered or alleged to have been suffered by any person ... arising out of any occurrence happening during the period of this insurance.

The policies define "occurrence" as follows:

The term "occurrence" ... shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury ... during the policy period.

## INTENTIONAL CONDUCT

In its first issue, the Diocese questions whether the trial court erred in granting Insurers' motion for summary judgment on the ground that Insurers owed no duty to indemnify the Diocese for any judgment which might be rendered in the underlying litigation because of Lynch's intentional conduct. Insurers' motion for summary judgment asserted the intentional and knowing torts alleged against the Diocese do not constitute an occurrence because, under those claims, Doe's injuries could not have been unexpected and unintentional. Insurers also argue the negligence claims alleged against the Diocese do not constitute an occurrence because the Diocese's negligence is inextricably intertwined or related and interdependent with Lynch's criminal behavior. The Diocese asserts the negligence claims are occurrences because, in determining whether there has been an occurrence, we consider the facts from the insured's viewpoint, and viewing Doe's negligence claims from the Diocese's viewpoint, Lynch's abuse of Doe was an unintended and unexpected result of any negligence in hiring, retaining, and

supervising Lynch and in failing to ascertain and warn Doe of Lynch's sexual propensities. The crux of the parties' disagreement concerns the interpretation of the Texas Supreme Court's opinion in *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185 (Tex.2002).

### The Supreme Court's Opinion

King owned a business that removed excess material from building sites. *Id.* at 187. An employee of another company, Jankowiak, approached King's employee, Lopez, and asked Lopez about missing copper wire and electric breakers. *Id.; King v. Dallas Fire Ins. Co.*, 27 S.W.3d 117, 121 (Tex.App.-Houston [1st Dist.] 2000), *rev'd*, 85 S.W.3d 185 (Tex.2002). After exchanging "words," Lopez attacked Jankowiak, causing him serious injury. *King*, 85 S.W.3d at 187; *King*, 27 S.W.3d at 121. Jankowiak sued Lopez's employer, King, alleging King was negligent in hiring, training, and supervising Lopez; in failing to run a criminal background check; in failing to determine whether Lopez had a propensity for violence; and in failing to provide training in peaceably handling situations. King forwarded Jankowiak's petitions to his insurer, Dallas Fire Insurance Co. The insurer denied coverage, asserting the petitions did not allege an occurrence under the terms of the policy. *King*, 85 S.W.3d at 187. King brought a declaratory judgment action asking the trial court to determine whether the insurer owed King a duty to defend. The trial court ruled against King, and the court of appeals affirmed. *Id.*

Under the policy in *King*, both Lopez and King were insureds. An occurrence under the policy was limited to an "accident." The policy also contained a separation of insureds clause stating, "this insur-

ance applies: a. As if each Named Insured were the only Named Insured; and b. Separately to each insured against whom claim is made or 'suit' is brought." *Id.* at 188. Under the "Exclusions" section, the policy provided:

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

*Id.* In construing the policy, the supreme court stated,

The separation-of-insureds provision expressly creates separate insurance policies for King and King's employee, Lopez. The policy provides that we are to treat the insureds "[a]s if each Named Insured were the only Named Insured." Consequently, we are instructed to determine whether there has been an "occurrence" as if King were the only insured.

*Id.*

The court then responded to the insurer's argument that Lopez's intent controls the determination of whether, as to King, Jankowiak's injuries resulted from an accident. The court stated that having Lopez's intent control that determination of whether there was an occurrence or exclusion as to King overlooks both the separation-of-insureds clause and the provision that intent to cause bodily injury is determined "from the standpoint of the insured." *Id.*

However, the court did not stop at the policy provisions but examined its history of interpreting insurance policies. It stated that since 1923, it had determined whether an incident was an "accident"— and thus an "occurrence" under insurance policies—from the viewpoint of the insured. *Id.; see Hutcherson v. Sovereign Camp, W.O.W.,* 112 Tex. 551, 558–59, 251 S.W. 491, 494 (1923) (life insurance case in which insured was shot and killed by beneficiary; determination of whether insured's death was "accidental" is viewed from standpoint of insured, not beneficiary); *see also Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 552 (Tex.1976) (life insurance policy; "[W]here an insured's injuries are caused by the intentional acts of another, the injuries are nevertheless accidental within the terms of an insurance policy covering death by 'accidental means' if from the insured's viewpoint his conduct was not such as to cause him to reasonably believe that it would result in his injury." *Heyward,* 536 S.W.2d at 557). The court also determined this method of construing insurance policies was consistent with its more recent cases construing liability insurance policies. *King,* 85 S.W.3d at 189–90 (discussing *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 826–27 (Tex. 1997) (liability policy; there was no "accident," and thus no "occurrence," because plaintiff's injuries were of type that ordinarily follows from insured's conduct)).

The supreme court then examined the federal courts' method of determining whether there has been an occurrence under a policy. The court observed that the district court's and Fifth Circuit's opinions in *Old Republic Insurance Co. v. Comprehensive Health Care Assocs.,* 786 F.Supp. 629 (N.D.Tex.1992), *aff'd,* 2 F.3d 105 (5th Cir.1993), have been relied on by federal courts as expressing Texas law. In that case, employees brought suit against Comprehensive Health Care Associates (CHCA) and their supervisor alleging the supervisor had sexually harassed them and that CHCA was negligent in hiring the supervisor. *Old Republic,* 786 F.Supp. at

631. The insurers refused to defend CHCA under their liability policies. *Id.* CHCA and the supervisor won in the underlying lawsuit, incurring attorney's fees of $105,000. The insurers brought a declaratory judgment action seeking a ruling they did not have a duty to defend CHCA and the supervisor in the underlying case. *Id.* The district court held there was no occurrence under the policy as a matter of law because the employees' claims of sexual harassment "allege intentional acts that are not 'occurrences' for the purpose of policy coverage." *Id.* at 633. The fact that the employees alleged negligence claims against CHCA did not affect this decision because the negligent torts were "related and interdependent" to the intentional torts. *Id.* at 632. The Fifth Circuit affirmed the district court, but it did so without addressing whether there was an occurrence under the policies. *Old Republic,* 2 F.3d at 107. Instead the Fifth Circuit determined that two exclusions—one excluding claims for sexual harassment and abuse and the other excluding claims arising out of the employment relationship—applied to prevent coverage. *Id.* at 108–10.

In *King,* the supreme court observed that, although the Fifth Circuit's opinion expressly did not address the district court's related-and-interdependent standard in analyzing whether there was an occurrence under Texas law, subsequent Fifth Circuit cases relied on the district court's opinion's related-and-interdependent rule, "erroneously presuming this reflects Texas law." *King,* 85 S.W.3d at 191 (citing as an example *Am. States Ins. Co. v. Bailey,* 133 F.3d 363, 371 (5th Cir.1998)). The court concluded that the Fifth Circuit's related-and-interdependent rule "improperly imputes the actor's intent to the insured." *Id.* at 191.

The supreme court concluded that under Texas law, "whether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally. Essentially, the actor's intent is not imputed to the insured in determining whether there was an occurrence. We conclude this is the better approach." *Id.* at 191–92 (citation footnote omitted). The court observed that this standard is consistent with the evolution of commercial general liability insurance policies. *Id.* at 192.

## Application of *King*

■ In the motion for summary judgment and in their brief before this Court, Insurers assert *King* does not apply because of the differences between the policy considered by the supreme court in *King* and the policies in this case. Unlike the policy evaluated by the supreme court in *King,* the policies in this case do not contain a separation-of-insureds clause, they do not contain a provision stating intent is determined from the standpoint of the insured, and the prohibition against coverage for intentional injury is in the definition of occurrence instead of in an exclusion. Insurers assert that to apply *King* to this case would render these distinctions in the policies meaningless. We disagree.

■ Insurers argue the decision in *King* was controlled by the separation-of-insureds clause. Insurers are correct that the decision in *King* interpreted the separation-of-insureds clause to require that when there is more than one insured, determination of the existence of an occurrence is made from the viewpoint of each insured separately. The court explained that it applied the separation-of-insureds clause to the determination of an occur-

rence because, historically, the determination of an occurrence under Texas law was made from the viewpoint of the insured. The court concluded that the federal courts' opinions to the contrary were "erroneous[ ]." Thus, the separation-of-insureds clause and the rule of determining an occurrence from the viewpoint of the insured serve similar, but different purposes. As *King* explains, under longstanding Texas law, the determination of an occurrence is made from the viewpoint of "the insured," and if there are multiple insureds, then the separation-of-insureds clause requires the determination of an occurrence be made separately for each insured from the viewpoint of each insured. *Cf. Alaska v. Houston Cas. Co.*, 797 P.2d 1200, 1204 (Alaska 1990) (where there are two insureds and no separation-of-insureds clause, coverage is intended to be coextensive and not independent). In this case, the lack of a separation-of-insureds clause in the policies is irrelevant because the Diocese is the only assured under the policies in the underlying case. Thus, following *King* 's explanation of the history of the interpretation of insurance policies from 1923 to the present, the determination of an occurrence is made from the Diocese's viewpoint. *Accord Lambrecht & Assocs. v. State Farm Lloyds*, 119 S.W.3d 16, 23 (Tex.App.-Tyler 2003, no pet.) (applying *King*, determination of whether intentional act of computer hacker installing virus on insured's computers barred coverage for resulting business loss is determined from viewpoint of insured, and fact that injury was result of intentional conduct did not bar coverage because it

was not intentional act of insured); *Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773, 784 (Tex.App.-Corpus Christi 2002, no pet.) (under *King*, coverage for liability from claim that company negligently provided inaccurate information about former employee to employee's subsequent employer is determined from company's viewpoint).

Insurers argue that the absence in the policies of language stating intent is determined from the viewpoint of the insured, which is contained in modern liability policies, means intent should not be determined from the Diocese's viewpoint. We disagree. As the supreme court explained, the existence of an occurrence was determined from the viewpoint of the insured before that language was added to the policies. *King*, 85 S.W.3d at 192. The language in the modern policies stating that intent is determined from the insured's viewpoint makes express what was previously implied in the law. Determining the existence of an occurrence from the viewpoint of the insured without the language that intent is determined from the viewpoint of the insured does not render the language meaningless, as appellant argues, nor does it render any other provision of the policy meaningless.

■ We conclude that, under the supreme court's explanation of Texas law in *King*, the determination of an occurrence under a liability policy is made from the viewpoint of the insured, unless the policy's terms provide otherwise, and any prior opinions from the Texas intermediate appellate courts—including this Court [2]— and the federal courts to the contrary

---

**2.** *See Folsom Inv., Inc. v. Am. Motorists Ins. Co.*, 26 S.W.3d 556, 561 (Tex.App.-Dallas 2000, no pet.) (following Fifth Circuit's *Bailey* opinion, allegations of negligent hiring and supervision of employee who committed sexual assault against plaintiff were related and interdependent on employee's intentional conduct against plaintiff and thus there was no occurrence under liability policy).

were implicitly overruled by *King*. Insurers' arguments to the contrary lack merit.

■ Applying *King* to this case, we view the existence of an occurrence from the Diocese's viewpoint. Insurers, as the movants for summary judgment, had the burden to establish conclusively that any judgment rendered in the underlying case cannot fall within coverage under the policies.

■ Insurers assert that Doe's allegations of intentional and knowing conduct mean that no judgment in the underlying case could have resulted from unexpected and unintentional personal injury to Doe. As Insurers note, Doe's causes of action against the Diocese include: (1) failing to warn of known dangerous propensities; (2) knowingly breaching and participating in breaches of its fiduciary duties to Doe; (3) fraud; (4) acting with malice and conscious indifference; (5) conspiring to cover up incidents of priests sexually abusing minors; and (6) intentionally inflicting emotional distress on Doe. Insurers argue that the basis of Doe's complaints was that the Diocese was aware of Lynch's pedophilia and his prior molestation of a boy, yet it allowed Lynch to have access to young boys. Thus, Insurers argue, Doe's injuries were not accidental but were of a type reasonably anticipated, not unexpected and unintentional, from the Diocese's conduct. *See Cowan*, 945 S.W.2d at 828. We disagree. The Diocese's alleged actual knowledge of Lynch's pedophilia and prior molestation was not the only basis of Doe's suit. Doe also alleged the Diocese was

negligent in hiring and retaining Lynch as a parish priest "when it ... should have known of his dangerous sexual propensities." Doe also alleged, "Defendant Diocese failed to provide reasonable supervision of Defendant Lynch." Neither of these claims requires the Diocese to have known about Lynch's sexual propensities for Doe to prevail. If Doe fails to prove the Diocese was aware of Lynch's pedophilia and his prior molestation, the trier of fact could still find the Diocese liable on these negligence grounds. Viewed from the Diocese's viewpoint, if it did not know of Lynch's sexual propensities, then his molesting Doe was both unexpected and unintentional, and a judgment for Doe in the underlying case could fall within coverage under the policies.

■ Related to this issue is the application of the doctrine of fortuity. Insurers stated in their amended motion for summary judgment, "The doctrine of fortuity precludes coverage for intentional actions designed to cause injury." Neither the motion nor the briefing in support of the motion discusses this summary judgment ground further.[3] Insurers have misstated the doctrine of fortuity; it does not necessarily preclude coverage for intentional actions designed to cause injury. The doctrine of fortuity precludes coverage for losses of which the insured knows at the time the insurance is purchased. *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex.App.-Dallas 2001, pet. denied). Coverage is also precluded when the insured is aware or should be aware of ongoing progressive losses at the time the in-

---

**3.** Insurers listed the doctrine as a ground for summary judgment but failed to present any argument in support of the ground in the amended motion for summary judgment or in the supplemental briefing in support of the motion. The Diocese did not except to the

motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex.1993) ("An exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous.").

surance is purchased. *Id.* To prevail on this ground in its motion for summary judgment, Insurers had to establish as a matter of law that, viewed from the Diocese's viewpoint, the trier of fact must conclude the Diocese knew or should have known of Lynch's sexual propensities when it purchased Insurers' policies. However, Insurers' proof does not meet this standard. Accordingly, Insurers failed to establish as a matter of law that the doctrine of fortuity precludes coverage.

■ However, even if the fortuity doctrine were as Insurers asserted in their summary judgment ground and precluded coverage for intentional conduct, we conclude that, in light of *King,* that determination must be made from the viewpoint of the insured. If the doctrine of fortuity precluded coverage for injury resulting from intentional conduct of which the insured had no knowledge, then the supreme court's decision in *King* would itself be overruled by the doctrine of fortuity. The *King* opinion did not discuss the fortuity doctrine, but we decline to hold the supreme court's holding in *King* is of no effect because of the fortuity doctrine.

We resolve the Diocese's first issue in its favor.

## Public Policy

■ In its second issue, the Diocese questions whether public policy considerations bar coverage in this case. Insurers moved for summary judgment on the ground that a duty to indemnify in this case would violate public policy. Public policy prohibits allowing a person from insuring against his intentional misconduct. *Decorative Ctr. v. Employers Cas. Co.,* 833 S.W.2d 257, 260 (Tex.App.-Corpus Christi 1992, writ denied). "The rationale

behind the public policy is that the insured is more likely to engage in behavior which is harmful to society if he believes that he will not have to bear the financial costs of his intentional indiscretions." *Id.; see Wessinger v. Fire Ins. Exch.,* 949 S.W.2d 834, 840 (Tex.App.-Dallas 1997, no pet.) (quoting *Decorative Ctr.*).

To prevail on this ground in a traditional motion for summary judgment, Insurers had to establish as a matter of law that any judgment in the underlying case rendered against the Diocese would be based on the Diocese's intentional conduct. As discussed above, a judgment could be based on the Diocese's negligent hiring, retention, and supervision of Lynch without a finding of any intentional conduct by the Diocese. *See State Farm Gen. Ins. Co. v. White,* 955 S.W.2d 474, 477 (Tex. App.-Austin 1997, no pet.) (liability coverage for day-care center from sexual abuse inflicted on child by center's employee did not violate public policy even though owner of center had previously witnessed employee sexually abuse a child and took no step to prevent his future sexual abuse of children attending the center); *cf. Wessinger,* 949 S.W.2d at 840 (public policy prohibited coverage for claim that insured got drunk and "negligently" caused injury to underlying plaintiff by punching him repeatedly in the head). We conclude Insurers failed to meet their summary judgment burden. We resolve the Diocese's second issue in its favor.

## DATES OF ABUSE

In its third issue, the Diocese questions whether the trial court erred in granting summary judgment for Insurers on the ground that some of the abuse predated the policies. Doe alleged Lynch sexually abused him beginning in 1977, and Insur-

ers' policies went into effect in 1978. The summary judgment Insurers moved for, and the judgment the trial court granted, determined Insurers had no duty to indemnify the Diocese in the underlying case. It is undisputed that some of Lynch's alleged abuse of Doe occurred after the policies went into effect. Thus, to be entitled to summary judgment under rule 166a(c) on this ground, Insurers had to establish as a matter of law that the sexual abuse alleged to have occurred during the policies' periods either did not injure Doe or for other reasons did not fall within coverage under the policies. Insurers presented no evidence in support of this ground. Accordingly, Insurers did not meet their summary judgment burden on this ground, and the summary judgment could not be based on this ground. We resolve the Diocese's third issue in its favor.

### FAILURE TO NEGATE ALL SUMMARY JUDGMENT GROUNDS

Insurers argue the summary judgment should be affirmed because the Diocese failed to negate on appeal all the grounds on which Insurers moved for summary judgment. *Jones v. Hyman,* 107 S.W.3d 830, 832 (Tex.App.-Dallas 2003, no pet.); *Holloway v. Starnes,* 840 S.W.2d 14, 23 (Tex.App.-Dallas 1992, writ denied). We disagree. The first five grounds asserted there was no coverage under the policy because Doe's injuries were caused by intentional conduct, sexual molestation, and were not unexpected and unintentional. These grounds were negated by the Diocese's first issue. Insurers' sixth ground asserted the doctrine of fortuity precluded coverage for intentional acts. This ground, as presented by Insurers, was also negated by the first issue. The seventh and eighth grounds alleged coverage for intentional acts and child molestation was precluded by public policy. These grounds were negated by the second issue. The final ground asserted there was no coverage for acts of sexual abuse predating the first policy period. This ground was negated in the Diocese's third issue. We conclude Insurers' argument lacks merit.

### CONCLUSION

We hold the trial court erred in granting Insurers' motion for summary judgment. However, we do not hold that any particular cause of action alleged in the underlying case is not covered by the policies. We hold only that Insurers failed to establish as a matter of law that no judgment rendered in the underlying case could fall within coverage of the policies. We reverse the trial court's judgment and remand the cause for further proceedings.