COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-351-CV

 

 

WARRANTECH CORPORATION AND                                     APPELLANTS

WARRANTECH
CONSUMER PRODUCT 

SERVICES,
INC.

 

                                                   V.

 

STEADFAST INSURANCE COMPANY                                         APPELLEE

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.                  
Introduction








This is an insurance dispute involving a
claims-made professional liability policy issued by Appellee Steadfast
Insurance Company to Appellants Warrantech Corporation and Warrantech Consumer
Product Services, Inc. (AWarrantech@). 
Warrantech sued Steadfast for breach of contract and insurance code
violations when Steadfast refused to defend Warrantech in another lawsuit (Athe underlying claim@). 
Steadfast filed a counterclaim for declaratory judgment, seeking a
declaration that it had no duty to defend Warrantech.  The parties filed cross-motions for summary
judgment.  The trial court denied
Warrantech=s motion,
granted Steadfast=s, and
awarded attorney=s fees to
Steadfast.  Warrantech appealed.  We modify the trial court=s judgment to delete the award of
attorney=s fees to
Steadfast, and we affirm the judgment as modified.

II.               
The Underlying Claim

Various reinsurers (Athe
Reinsurers@) alleged
claims against Warrantech in the underlying suit for fraud and negligent
misrepresentation arising out of Warrantech=s
administration of consumer product warranties on behalf CompUSA, a national
retailer of electronics goods.  The
following paragraphs summarize the allegations made by the Reinsurers.  








Warrantech is in the business of administering
extended service plans and consumer warranty programs on computers and other
retail goods.  In 1995, Warrantech
contracted with CompUSA to administer CompUSA=s
warranty program.  To cover the cost of
the warranty claims it was required to pay, Warrantech obtained insurance coverage
from Houston General Insurance Company. 
Under that insurance coverage, Warrantech submitted the warranty claims
it paid to Houston General for reimbursement. 
Houston General obtained reinsurance for the risk from the Reinsurers
for claims paid in 1996 and 1997.  In
essence, Houston General and the Reinsurers paid for warranty repairs made to
CompUSA products and authorized by Warrantech. 
The insuring agreements prohibited Warrantech from paying
unsubstantiated warranty claims.

CompUSA=s
warranty program was entirely paperless; warranty information existed only in
its computer database.  The warranty
database was incomplete and inaccurate. 
Many of the electronic records of warranties CompUSA claimed to have
sold did not identify the customer, the product, or they type of warranty
sold.  Warrantech called these
unidentifiable warranties Ashell
contracts.@

When a CompUSA customer called Warrantech with a
warranty claim, it was frequently impossible for Warrantech to locate the
caller=s CompUSA
warranty.  Initially, Warrantech would
not authorize a product repair unless the customer could provide proof-of-purchase
documentation identifying the product and warranty purchased from CompUSA.  When the proof-of-purchase requirement proved
burdensome, Warrantech began to authorize repairs on unvalidated or Anon-val@
warranty claims.  Warrantech would then
attempt to manually match the repair invoice to a specific CompUSA warranty in
the Warrantech database.  This process
was time-consuming and labor-intensive. 








Warrantech began to link non-val warranty claims
to the unidentifiable shell contracts. 
In 1996, it developed computer software to automate the linking process
and developed a second version of the software in 1997.  This automated linking process allowed
Warrantech to pay non-val claims with insurance money. 

When the CompUSA warranty claims paid by
Warrantech greatly exceeded what the Reinsurers expected to pay, the Reinsurers
arranged to have Warrantech audited in 1998. 
The audit did not discover the automated linking software, and
Warrantech did not disclose its existence. 
Nonetheless, as a result of the audit, Houston General accused
Warrantech of significant overpayment of claims and demanded reimbursement from
Warrantech for more than $19 million. 
Likewise, the Reinsurers refused to reimburse Houston General for
Warrantech claims. 








Houston General began an arbitration proceeding in
June 2000 against the Reinsurers, seeking reimbursement for $46 million paid by
Houston General to Warrantech for CompUSA warranty claims.  During the arbitration discovery process,
Warrantech denied the existence of the automated linking software. But during
the arbitration hearing in January 2002, the Reinsurers learned that the
linking software existed, and Warrantech produced the first version of the
software.  Soon thereafter, the
Reinsurers learned that Warrantech had intentionally destroyed the second
version of the linking software.  The
arbitration panel awarded $39 million to Houston General in August 2002.             The
Reinsurers sued Warrantech on September 19, 2002, for fraud and negligent
misrepresentation, seeking to recover an unspecified sum for the
unsubstantiated warranty claims paid by Warrantech.

III.            
The Insurance Policy

Steadfast issued a professional liability policy
to Warrantech with a coverage period of July 30, 2002, to July 30, 2003.  The policy contains the following potentially
relevant provisions:

I.          COVERAGE

[Steadfast]
will pay on behalf of the AInsured@ all sums, in excess of the Deductible,
which the AInsured@ shall become liable to pay as ADamages@
arising from each AClaim@ made during the APolicy Period@
. . . unless as of the inception date of this Policy any AInsured@
knew or could reasonably foresee that such AClaim@ would be made . . . during the APolicy Period.@


 

II.        DEFENSE AND SETTLEMENT; POLICY TERRITORY

 

. . . .

 

A.        [Steadfast] shall defend any AClaim@ against the AInsured@ seeking ADamages@ which are payable under the terms of
this policy, even if such AClaim@ is groundless, false or fraudulent. 

[JFM1] 

. . . .

VI. 
DEFINITIONS








. . . .

 

B.        AClaim@ means any written demand received by
the AInsured@ for ADamages@ or services, including but not limited
to service of suit or other process, alleging a AWrongful
Act@ by the AInsured@. 

 

. . . .

 

D.        ADamages@ means a monetary judgment or award the
AInsured@
is legally obligated to pay[.] 

 

. . . .

 

J.          AWrongful
Act@ means any:

 

1.         actual or alleged error, omission,  neglect, misstatement or misleading
statement;

2.         breach of duty;

 

. . . .

 

unintentionally committed by any Ainsured@, or a person for whom the Named Ainsured@
is legally liable, solely in the rendering of professional services. 

 

. . . .

Endorsement No. 1

 

AMENDMENT OF EXCLUSION A.

 

[This policy does not apply to any AClaim@ based upon or arising out of:]

 








A.        any dishonest, fraudulent or criminal act, error or omission
or those of a knowing wrongful nature committed by or at the direction of the AInsured@.  The Company, however, shall provide a defense
for such Aclaim@ unless or until a judgment or final
adjudication adverse to the AInsured@ shall establish such behavior as an
essential element of the cause of action so adjudicated. 

 

IV.            
Standard of Review

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of
action or defense as a matter of law.  Clear
Creek Basin, 589 S.W.2d at 678.

When both parties move for
summary judgment and the trial court grants one motion and denies the other,
the reviewing court should review both parties= summary judgment evidence and determine all questions presented.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.

V.               
Discussion

A.               
Duty to Defend

In its first issue, Warrantech argues that the
trial court erred by ruling that Steadfast has no duty to defend Warrantech in
the underlying suit.  Steadfast responds
that, among other things, the Afortuity
doctrine@
precludes its duty to defend Warrantech for the underlying claim.

                                                          The
Eight-Corners Rule








Under the eight‑corners
or complaint‑allegation rule, an insurer=s duty to defend is determined by the third‑party plaintiff=s pleadings, considered in light of the policy provisions, without
regard to the truth or falsity of those allegations.  GuideOne Elite Ins. Co. v. Fielder Rd.
Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006).  The rule takes its name from the fact that
only two documents are ordinarily relevant to the determination of the duty to
defend:  the policy and the pleadings of the
third‑party claimant.  Id.  Facts outside the pleadings, even those
easily ascertained, are ordinarily not material to the determination, and
allegations against the insured are liberally construed in favor of
coverage.  Id.  A plaintiff=s factual allegations that potentially support a covered claim are all
that is needed to invoke the insurer=s duty to defend, whereas the facts actually established in the
underlying suit control the duty to indemnify. 
Id. at 310.  A duty to
defend any of the claims against an insured requires the insurer to defend the
entire suit.  CU Lloyds of Tex. v.
Main Street Homes, Inc., 79 S.W.3d 687, 692 (Tex. App.CAustin 2002, no pet.).

                                      The Fortuity Doctrine








Insurance is designed to
protect against unknown, fortuitous risks, and fortuity is a requirement of all
policies of insurance.  Burlington
Ins. Co. v. Tex. Krishnas, Inc., 143 S.W.3d 226, 230 (Tex. App.CEastland 2004, no pet.); Scottsdale Ins. Co. v. Travis, 68
S.W.3d 72, 75 (Tex. App.CDallas 2001,
pet. denied); Two Pesos, Inc. v. Gulf Ins. Co., 901 S.W.2d 495, 502
(Tex. App.CHouston
[14th Dist.] 1995, no writ) (op. on reh=g).  An insured cannot insure
against something that has already begun and which is known to have begun.  Summers v. Harris, 573 F.2d 869, 872
(5th Cir. 1998).  The fortuity doctrine
precludes coverage for two categories of losses:  known losses and losses in progress.  Tex. Krishnas, Inc., 143 S.W.3d at
230; Travis, 68 S.W.3d at 75.  A Aknown loss@ is one that
the insured knew had occurred before the insured entered into the contract for
insurance.  Burch v. Commonwealth
County Mut. Ins. Co., 450 S.W.2d 838, 840‑41 (Tex. 1970); Tex.
Krishnas, Inc., 143 S.W.3d at 230; Travis, 68 S.W.3d at 75.  A Aloss in progress@ involves
those situations in which the insured knows, or should know, of a loss that is
ongoing at the time the policy is issued. 
Tex. Krishnas, Inc., 143 S.W.3d at 230;  Travis, 68 S.W.3d at 75; Two Pesos,
Inc., 901 S.W.2d at 502.  Application
of the fortuity doctrine in the duty-to-defend context is resolved by the
eight-corners rule; Awe focus
only on those facts that are alleged in the pleadings in the underlying
lawsuit.@  Tex. Krishnas, Inc.,
143 S.W.3d at 230.








Warrantech argues that Aloss@ in Aknown loss@ or Aloss in progress@ means a
judgment ultimately rendered against the insured.  Warrantech reasons that until rendition of
judgment on the underlying claim, the loss is uncertain and cannot be Aknown.@  We reject this argument.  Warrantech 
supports its argument with no cases applying Texas law, and the argument
is fatally undermined by the many cases applying the fortuity doctrine under
Texas law where the insured=s liability was not yet fixed by judgment.  See, e.g., Roman Catholic
Diocese of Dallas ex rel. Grahmann v. Interstate Fire & Cas. Co., 133
S.W.3d 887, 889 (Tex. App.CDallas 2004, pet. denied);  Scottsdale
Ins. Co., 68 S.W.3d at 74. 
Finally, at least one court applying Texas law has rejected the same
argument made by Warrantech.  See
Franklin v. Fugro McClelland (Sw.), Inc., 16 F. Supp. 2d 732, 735 (S.D.
Tex. 1997).

                The Fortuity Doctrine Applies to Claims-Made
Policies

Warrantech argues that the
fortuity doctrine does not apply to a claims-made policy like the one at
issue.  According to Warrantech, the very
nature of a claims-made policy anticipates the possibility of losses occurring
before the policy=s inception
date, and to apply the fortuity doctrine to a claims-made policy would render
the contract of insurance illusory because there would never be coverage for
losses occurring before the inception date. 








We disagree.  First, fortuity is a requirement of all
insurance policies.  Two Pesos, Inc.,
901 S.W.2d at 501.  Second, it is not the
existence of a loss but the insured=s knowledge of the loss that triggers the fortuity doctrine.  As we have already observed, the fortuity
doctrine precludes coverage for known losses and losses the insured knows,
or should know, are ongoing at the time the policy is issued.  See Tex. Krishnas, Inc., 143
S.W.3d at 230; Travis, 68 S.W.3d at 75. 
Application of the fortuity doctrine to a claims-made policy will
preclude coverage for losses of which the insured knows but will not preclude
coverage for losses of which the insured is ignorant at the policy=s inception.  Thus, the fortuity
doctrine does not render claims-made insurance illusory but merely restricts
coverage to unknown losses.

Moreover, several courts have
applied the fortuity doctrine to claims-made policies under Texas law.  See Centennial Ins. Co. v. Bailey, No.
05‑98‑00007‑CV, 2000 WL 1515158, at *7, *10 (Tex. App.CDallas Oct. 12, 2000, no pet.) (not designated for publication)
(applying fortuity doctrine to pastoral professional liability claims-made
policy); Precis, Inc. v. Fed. Ins. Co., No. 4:05‑CV‑411‑A,
2005 WL 1639319, at *6 (N.D. Tex. July 12, 2005) (mem. op. & order)
(applying Texas law and holding that known-loss rule precluded duty to defend
under officers= liability
claims-made policy); Serv. Cas. Ins. Co. v. The Travelers Ins. Co., No.
Civ.A.SA04CV251‑XR, 2004 WL 2218381, at *6 (W.D. Tex. October 4, 2004)
(order) (applying Texas law and holding fortuity doctrine precluded coverage
for retaliatory-discharge claim when insured=s actions forming basis of claim occurred before inception of policy).  

                               Application of Fortuity Doctrine








Assuming for the sake of
argument that Steadfast would otherwise owe Warrantech a duty to defend the
underlying claim, we hold that the fortuity doctrine precludes that duty.  We review the facts alleged by the Reinsurers
without regard to their truth or falsity. 
See GuideOne Elite Ins. Co., 197 S.W.3d at 308.  In 1996, Warrantech began haphazardly to
match unvalidated warranty repair claims to shell warranty contracts in a
deliberate attempt to turn unvalidated, uninsured claims into validated, insured
claims.  Warrantech automated that
process with the linking software in 1997. 
Warrantech then denied the existence of the linking software during the
arbitration proceeding and deliberately destroyed the second version of the
software.  As a result of a 1998 audit,
Houston General accused Warrantech of overpaying claims and demanded
reimbursement of $19 million, and the Reinsurers refused to reimburse Houston
General for Warrantech claims. 
Warrantech was aware of and involved in the arbitration between Houston
General and the Reinsurers over disputed Warrantech claims.  All of this happened before the policy=s inception date of July 30, 2002. 
The only significant event to occur after the policy=s inception date was the arbitration panel=s $39 million award to Houston General in August 2002.








The Reinsurers= petition compels one conclusion: 
Warrantech knew of the loss caused by its mispayment of warranty claims
long before the inception date of Steadfast=s policy.  This is true
regardless of whether Warrantech made the mispayments intentionally or merely
negligently as alternatively alleged by the Reinsurers in the underlying
suit.  As of July 30, 2002, the policy=s inception date, the only unknown was whether Houston General or the
Reinsurers would bear the brunt of the loss upon resolution of the arbitration
proceeding.

Warrantech argues that
Endorsement No. 1 precludes application of the fortuity doctrine.  Endorsement No. 1 excludes any claim arising
from 

any
dishonest, fraudulent or criminal act . . . or those of a knowing wrongful
nature committed by or at the direction of the >Insured.= [Steadfast],
however, shall provide a defense for such >claim=
unless or until a judgment . . . adverse to the >Insured=
shall establish such behavior occurred as an essential element of the cause of
action[.]

 

Again, we disagree with Warrantech=s analysis.  Implicit in a
dishonest, fraudulent, or criminal act is knowledge that the act is
wrongful.  Application of the fortuity
doctrine does not hinge on whether the insured knew a particular act was
wrongful.  Rather, it hinges on whether
the insured knew before the inception of coverage that an actCknowingly wrongful or otherwiseCresulted in a loss.  Therefore,
Endorsement No. 1 is simply irrelevant to the fortuity analysis.  The question is not whether Warrantech caused
the loss knowingly, but whether it knew of the loss before the policy=s inception.

Applying the fortuity
doctrine under the constraints of the eight-corners rule, we hold that
Steadfast has no duty to defend Warrantech against the Reinsurers= claims.

B.                
ACoverage@








Steadfast=s
trial court pleading and summary judgment motion sought two declarations:  that its policy provided no Acoverage@
for the Reinsurers= claims
and that it had no duty to defend Warrantech. 
The trial court=s
final judgment granted Steadfast=s
summary judgment motion in all respects. 
Steadfast never explained what it meant by Acoverage.@ 
Having determined that Steadfast is entitled to summary judgment on the
duty to defend, we must now determine whether it is entitled to summary
judgment on Acoverage.@

To answer that question, we must first determine
what Acoverage@ means. 
Steadfast=s policy,
like all Texas liability policies, imposed two distinct duties:  the duty to defend and the duty to
indemnify.  See Farmers Tex.
County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997); Trinity
Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821‑22 (Tex. 1997).  Thus, Acoverage@ can mean one of three things:  the duty to defend, the duty to indemnify, or
both.  The insuring agreement in
Steadfast=s policy
is divided into two sections:  AI. Coverage@
and AII.
Defense and Settlement.@  The indemnity agreement appears under the Acoverage@
section, and the defense agreement appears under the Adefense
and settlement@
section.  Thus, under Steadfast=s policy, Acoverage@ means Aindemnity@ or Aduty
to indemnify,@ even
though the words Aindemnity@ and Aindemnify@ do not appear in the policy.








The next question is whether
Steadfast sought a declaration on the duty to indemnify.[1]  The words Aindemnity@ or Aindemnify@ appear
nowhere in Steadfast=s trial
court pleadings, its motion for summary judgment, its brief in this court, or
the trial court=s
judgment.  Instead, Steadfast pleaded
vaguely for a declaration on Acoverage.@  Because Acoverage@ means Aindemnity@ under
Steadfast=s policy,
Steadfast=s pleading
and summary judgment motion regarding Acoverage@ arguably
sought a declaration on the duty to indemnify.

But Steadfast admitted in the
trial court that it did not seek a declaration on indemnity.  After the trial court granted summary
judgment, a question arose as to Steadfast=s right to attorney=s fees under the Declaratory Judgment ActCa question we will answer later in this opinion.  In connection with that dispute, Steadfast
filed a motion containing the following statements:

$                  
A[T]he
issue of indemnity had never specifically been raised by either party in this
case[.]@ 

 








$                  
AHow,
then, can Steadfast=s
argument for attorneys= fees
be based on its contention that its counterclaim included a duty to indemnify
when Steadfast admittedly did not move for summary judgment on that
issue?@
[Emphasis in original.] 

 

$                  
A[T]he
duty to indemnify was never before the Court.@ [Emphasis
in original.] 

 

From these statements, it is clear that Steadfast
did not seek a declaration on the duty to indemnify.

ACoverage@ under Steadfast=s policy
means the duty to indemnify.  But
Steadfast admitted that it did not seek a declaration or summary judgment on
its duty to indemnify.  We therefore hold
that the trial court erred by granting summary judgment on Acoverage.@  We overrule Warrantech=s first issue in part and sustain it in part.

C.     Article 21.55 Claim








In its second issue,
Warrantech argues that the trial court erred by denying its motion for summary
judgment and granting Steadfast=s motion on Warrantech=s insurance code article 21.55 claim. 
Article 21.55, section 6 penalizes an insurer that wrongfully refuses to
pay a claim.  Tex. Ins. Code Ann. art. 21.55,  ' 6 (Vernon 2004).  Warrantech
argues that Steadfast=s refusal to
defend it in the underlying suit triggers the article 21.55, section 6
penalties.  Because we have already
determined that Steadfast owes Warrantech no defense in the underlying suit, we
also hold that the trial court did not err by granting Steadfast=s motion for summary judgment with regard to Warrantech=s article 21.55 claim and by denying Warrantech=s motion.  We overrule
Warrantech=s second
issue.

D.     Attorney=s Fees

In its third issue,
Warrantech argues that the trial court erred by awarding attorney=s fees to Steadfast under the Declaratory Judgment Act.  We agree.

The Declaratory Judgment Act
provides that A[i]n any
proceeding under this chapter, the court may award costs and reasonable and
necessary attorney=s fees as
are equitable and just.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 2005).  A party
bringing a counterclaim under the Declaratory Judgment Act may recover its
attorney=s fees Aif its
counterclaim is more than a mere denial of the plaintiff=s cause of action.@  HECI Exploration Co. v.
Clajon  Gas Co., 843 S.W.2d 622, 638 (Tex. App.C Austin 1992, writ denied).  The
award or denial of attorney=s fees is within the sound discretion of the trial court.  Oake v. Collin County, 692 S.W.2d 454,
455 (Tex. 1985); Redwine v. AAA Life Ins. Co., 852 S.W.2d 10, 17 (Tex.
App.CDallas 1993, no writ).








The Declaratory Judgment Act
is not available, however, to settle disputes already pending before a court.  Redwine, 852 S.W.2d at 17 (citing John
Chezik Buick Co. v. Friendly Chevrolet Co., 749 S.W.2d 591, 594 (Tex. App.CDallas 1988, writ denied)).  For
example, a counterclaim brought under the Declaratory Judgment Act presenting
no new controversies but brought solely to pave an avenue to attorney=s fees is improper.  Id. 

Steadfast argues that its
counterclaim is more than a mere denial of Warrantech=s claim because it sought a Adetermination regarding coverage under the Policy[.]@  As we have already determined,
Acoverage@ under
Steadfast=s policy
means the duty to indemnify.  Yet
Steadfast explicitly denied that it sought a declaration on the duty to
indemnify.

The two duties arising from
the policy are the duty to defend and the duty to indemnify, and Steadfast did
not seek a declaration on the duty to indemnify.  Therefore, Steadfast sought only a
declaration that it had no duty to defend Warrantech, which was a mere denial
of Warrantech=s claim for
breach of the duty to defend.  Thus, we
hold that the trial court erred by awarding attorney=s fees to Steadfast under the Declaratory Judgment Act.  We sustain Warrantech=s third issue.

VI.    Conclusion








We overrule Warrantech=s first issue in part and sustain it in part, overrule its second
issue, and sustain its third issue.  We
do not reach Warrantech=s remaining
issues, in which it argues that it is entitled to recover its attorney=s fees and statutory penalties. 
See Tex. R. App. P.
47.1.  We modify the trial court=s judgment to exclude judgment with regard to Acoverage@ and omit
the award of attorney=s fees to
Steadfast, and we affirm the judgment as modified. See Tex. R. App. P. 43.2(b). 

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:
November 30, 2006











[1]The
duty to indemnify is justiciable before the insured=s
liability is determined in the liability lawsuit when the insurer has no duty
to defend, and the same reasons that negate the duty to defend likewise negate
any possibility the insurer will ever have a duty to indemnify.  Farmers Tex. County Mut. Ins. Co., 955
S.W.2d at 82‑83; Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,
No. 14‑05‑00487‑CV, 2006 WL 1892669, at *13-14 (Tex. App.CHouston
[14th Dist.] July 6, 2006, no pet.).















 [JFM1]

The Adefense@
coverage incorporates the Aindemnify@
coverage; no duty to defend if no duty to pay.